[No. 4739-0-II.   Division Two.   July 21, 1982.]

THE STATE OF WASHINGTON, *Respondent,* v. LOREN K. SOUTHARD, *Appellant.*

*William Knebes,* for appellant.

*David Bruneau, Prosecuting Attorney, Kenneth Cowsert, Chief Deputy,* and *Deborah Snyder, Deputy,* for respondent.

PETRICH, A.C.J.—In this appeal from a conviction of unlawful possession of a controlled substance, defendant, Loren Southard, challenges the court's denial of his motion to suppress the evidence discovered in a brown paper bag which itself was on the floorboards behind his automobile's front passenger seat. *United States v. Ross,* ___ U.S. ___, 72 L. Ed. 2d 572, 102 S. Ct. 2157 (1982) mandates the framing of the issues before us: whether the police had probable cause to believe defendant's car contained contraband so that their stop and search of the car was legitimate, and, whether their search of the paper bag found inside the car was within the proper scope of their warrantless search. We answer these issues in favor of the State and, accordingly, affirm.

At approximately 9 p.m. on July 1, 1979, a confidential and reliable informant told Deputy Compton by telephone that defendant and his wife had just delivered a pound of marijuana to the informant's residence, that defendant possessed a large quantity of hashish which he carried in a brown paper bag, and that defendant intended to make another delivery near Forks. The informant described defendant's automobile and license number, and also expressed his belief that defendant was possibly armed. Soon after calling the prosecutor to confirm his opinion that a warrant would not be necessary to stop defendant's moving vehicle, Deputy Compton radioed the above information to the local law enforcement agencies with instructions to stop the car and search it for a bag containing the contraband.

Within 1 hour of the informant's call, Sergeant Rice of the Forks Police Department and Deputy Griswold of the Clallam County Sheriff's Department stopped defendant's automobile in Forks. Rice removed defendant from the driver's side and then frisked him. Griswold, meanwhile, removed Mrs. Southard from the passenger's side, frisked her outer clothing, and removed a purse from her possession. In making a quick search of the passenger's side, Griswold reached behind the passenger's seat and pulled out a brown paper bag from under a white knit shawl. The bag's top was rolled shut. After Griswold opened the bag and observed numerous glassine packets of hashish inside the bag, defendant and his wife were placed under arrest.

Shortly after the arrest a tow truck transported defendant's car to the Forks police station where a "secondary search" uncovered a small amount of marijuana. (Because the car was not impounded there was no attempt to call this an inventory search.) The seized contraband, as well as additional statements from the informant, was then used to obtain a search warrant for defendant's residence where police discovered drug paraphernalia and another small cache of marijuana.

At a hearing on October 31, 1979, defendant orally moved to suppress certain evidence and argued that the search of the paper bag was improper; the court denied defendant's motion. For purposes of trial, parties stipulated *inter alia* that "on the 1st day of July, 1979, officers . . . recovered more than forty (40) grams of marijuana, pursuant to a search of a motor vehicle owned and in the possession of the defendant, Loren Southard." The court consequently found defendant guilty on December 17, 1979, of the crime of unlawful possession of a controlled substance, RCW 69.50.401(c).[1]

---

[1]The information charged defendant with violating RCW 69.50.401(c). The judgment incorporates this statute in its own statement of the crime. At the time of defendant's arrest, however, RCW 69.50.401(d), which had been in effect since March 21, 1979, defined the crime of unlawful possession. Laws of 1979, ch. 67, § 1. Because defendant did not raise this discrepancy, and because it did not appear

Although defendant on appeal challenges the propriety of the secondary search and the search of his residence, such issues are moot as his guilt was not based upon any evidence found during those searches. Defendant, however, also argues that the trial court erred in not suppressing the evidence found inside the paper bag because (1) the warrantless stop and search of his car was improper, and (2) even if it was proper, the officers were required to obtain a warrant allowing them to search the paper bag. We disagree with defendant's contentions.

■ We first look at the warrantless stop and search of the car. It is clear beyond peradventure that when officers have probable cause to believe a vehicle contains contraband, they may stop and search that vehicle without complying with the constitution's general warrant requirement. *See United States v. Martinez–Fuerte,* 428 U.S. 543, 49 L. Ed. 2d 1116, 96 S. Ct. 3074 (1976); *Chambers v. Maroney,* 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975 (1970); *Carroll v. United States,* 267 U.S. 132, 69 L. Ed. 543, 45 S. Ct. 280, 39 A.L.R. 790 (1925). *See also State v. Davis,* 29 Wn. App. 691, 630 P.2d 938 (1981). The probable cause determination must be based on objective facts that could justify the issuance of a warrant by a magistrate. *United States v. Ross, supra.* Here, defendant does not dispute what the record clearly shows, namely, that Sergeant Rice and Deputy Griswold had knowledge of such facts, circumstances, and reasonably trustworthy information which would warrant a man of reasonable caution to believe that defendant's car contained contraband.

The decision to dispense with the warrant requirement in "automobile exception"–type cases rested largely upon the impracticability of securing search warrants for vehicles that "can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." *Carroll v. United States,* 267 U.S. at 153. Defendant thus contends

---

to deprive him of a fair trial in any way whatsoever, we consider any error to be harmless and waived.

that because Deputy Compton took time to call the county prosecutor for advice and because defendant's car was not stopped until approximately 1 hour after the informant's call, this is not an automobile exception–type of case. This is a hollow argument. First, the circumstances that furnished the probable cause were unforeseeable, and arose suddenly and unexpectedly. Second, the mobility of defendant's automobile never ceased to be a threat to the removal or loss of the evidence until it was stopped by Rice and Griswold. *See Chambers v. Maroney,* 399 U.S. at 51. As there was simply no way the police could freeze the situation until they had a warrant, we conclude the warrantless seizure and search of defendant's automobile was legitimate.[2]

We now turn to defendant's second, and final, contention. He argues that the paper bag so manifested his expectations of privacy in its contents that it was protected from warrantless searches by the Fourth Amendment. While we agree that a recent line of Supreme Court cases suggested such an issue, *see Robbins v. California,* 453 U.S. 420, 69 L. Ed. 2d 744, 101 S. Ct. 2841 (1981) (plurality opinion); *Arkansas v. Sanders,* 442 U.S. 753, 61 L. Ed. 2d 235, 99 S. Ct. 2586 (1979), it is no longer an appropriate one to raise if the search of the paper bag was made during a warrantless, automobile exception–type search.

According to *United States v. Ross,* the general issue should focus on the scope of the automobile exception to the warrant requirement. Specifically, we must ask whether, in the course of the legitimate warrantless search of defendant's automobile, police were entitled to open the paper bag found within the vehicle.

■ *Ross* began to suggest its eventual holding in the following discussion:

In *Chambers* v. *Maroney* the police found weapons and stolen property "concealed in a compartment under the

[2]Moreover, the Clallam County Sheriff's Department did not have the equipment for telephonic search warrants.

dashboard." 399 U. S., at 44. No suggestion was made that the scope of the search was impermissible. It would be illogical to assume that the outcome of *Chambers*—or the outcome of *Carroll* itself—would have been different if the police had found the secreted contraband enclosed within a secondary container and had opened that container without a warrant. If it was reasonable for prohibition agents to rip open the upholstery in *Carroll,* it certainly would have been reasonable for them to look into a burlap sack stashed inside; if it was reasonable to open the concealed compartment in *Chambers,* it would have been equally reasonable to open a paper bag crumpled within it. A contrary rule could produce absurd results inconsistent with the decision in *Carroll* itself.

. . .

As we have stated, the decision in *Carroll* was based on the Court's appraisal of practical considerations viewed in the perspective of history. It is therefore significant that the practical consequences of the *Carroll* decision would be largely nullified if the permissible scope of a warrantless search of an automobile did not include containers and packages found inside the vehicle. Contraband goods rarely are strewn across the trunk or floor of a car; since by their very nature such goods must be withheld from public view, they rarely can be placed in an automobile unless they are enclosed within some form of container. The Court in *Carroll* held that "contraband goods *concealed* and illegally transported in an automobile or other vehicle may be searched for without a warrant." 267 U. S., at 153 (emphasis added).

(Footnote omitted.) *United States v. Ross,* ___ U.S. ___, 102 S. Ct. at 2169–70.

Although *Ross* supports defendant's argument that his expectation of privacy in his paper bag was protected by the Fourth Amendment,[3] it declares that those interests must yield to the authority of a search which does not itself

---

[3]"For just as the most frail cottage in the kingdom is absolutely entitled to the same guarantees of privacy as the most majestic mansion, so also may a traveler who carries a toothbrush and a few articles of clothing in a paper bag or knotted scarf claim an equal right to conceal his possessions from official inspection as the sophisticated executive with the locked attache case." (Footnote omitted.) *United States v. Ross,* ___ U.S. ___, 102 S. Ct. at 2171.

require the prior approval of a magistrate. Thus, in answer to the question of scope, the Court held that

> [t]he scope of a warrantless search based on *probable cause* is no narrower—and no broader—than the scope of a search authorized by a warrant supported by probable cause. Only the prior approval of the magistrate is waived; the search otherwise is as the magistrate could authorize.
>
> The scope of a warrantless search of an automobile thus is not defined by the nature of the container in which the contraband is secreted. Rather, it is defined by the object of the search and the places in which there is *probable cause* to believe that it may be found.

(Footnote omitted. Italics ours.) *United States v. Ross,* __ U.S. __, 102 S. Ct. at 2172.

Because the police had probable cause to believe defendant's car contained contraband, and because a paper bag was a place in which they had probable cause to believe the contraband could be found, their search of the paper bag was within the proper scope.[4]

Nowhere does the defendant argue his position on independent state constitutional grounds. We therefore need not consider such issue here.

We affirm.

PETRIE, J., and JOHNSON, J. Pro Tem., concur.

Reconsideration denied October 26, 1982.

---

[4]That Deputy Griswold had probable cause to believe defendant's car carried a brown paper bag containing contraband in no way changes our analysis.