[No. 6701-3-II.  Division Two.  December 19, 1985.]

THE STATE OF WASHINGTON, *Respondent,* v. JOHNNIE DWIGHT GOODMAN, *Appellant.*

REED, A.C.J., dissents in part by separate opinion.

*Jeffory Adams,* for appellant.

*William H. Griffies, Prosecuting Attorney,* and *Barbara L. Corey–Boulet, Deputy,* for respondent.

PETRICH, J.—Johnnie Goodman appeals his convictions for second degree burglary and second degree possession of stolen property. The issues on appeal are whether the trial court erred in refusing to suppress items seized in a warrantless search of Goodman's car, and in ruling that evidence of his prior convictions would be admissible if

Goodman testified in his own defense. We affirm the second degree burglary conviction and reverse the second degree possession of stolen property conviction.

Shortly after midnight July 23, 1982, Detective Jackson of the Tacoma Police Department responded to a suspicious activity report that two men had been seen walking around in a residential area and getting in and out of a parked car. Jackson found Goodman, whom he knew as a convicted felon from previous contacts, sitting in his car in front of a house. Goodman answered the detective's questions, saying he was waiting for a friend who was visiting in the neighborhood, but could not recall the friend's name or whom the friend was visiting. After some conversation and a clean warrant check, Goodman drove off.

Jackson parked his patrol car a few blocks away and began to walk the area with his dog, K–9 Ryker. From his observation point in a side yard, he saw Goodman drive past, alone, eleven or more times in the next half hour. On his last circle, Goodman had a passenger, later identified as Roy Henley. Jackson saw Goodman drive down a cul–de–sac, stop the car, turn out the lights, and open the trunk. Henley got out, ran to a side yard, and returned with a light–colored suitcase which he put in the trunk. The two men got back in the car. Goodman turned the car around and, with the lights on, began to drive off.

Jackson radioed for assistance, and two other officers in the area stopped Goodman's car, asking the two men to step out. The detective arrived to question them. When asked about the suitcase, Goodman first denied knowing anything about a suitcase, then said it was Henley's. Henley also first denied knowing about the suitcase, but when told Goodman had said it was Henley's, Henley said he had found it sitting beside the road, did not know whose it was, and wanted to find the owner. Jackson opened the locked trunk, took out the suitcase, and searched it. Inside were a marine radiotelephone, a rotary grinder, and a pair of binoculars. Jackson also looked in the back of Goodman's car, and saw a hypodermic syringe on the back window deck

and a black purse on the backseat, which he did not remove.

Jackson and his dog then went to the point where Henley had been when he put the suitcase into the trunk and tracked Henley's scent back to a nearby house, which had been ransacked. Tools, stereo equipment, and other items were found stacked near the back door. The items in the suitcase were later identified as belonging to the couple living in the house. Jackson notified the other officers that he had located the burglary, which was directly linked to Goodman and Henley through the tracking dog. Before learning a burglary had in fact occurred, the other officers searched the interior of Goodman's car, finding a syringe and a black purse containing credit cards and checks belonging to the woman living in the ransacked house.

The trial court found that Jackson was unaware that a burglary had occurred when he searched the suitcase, nor could he, at that time, articulate any specific criminal activity he suspected. He had believed the two were engaged in criminal activity from the totality of the circumstances, his own experience, and his knowledge of Johnnie Goodman. He did not discover the actual burglary until after the suitcase and the car's interior had been searched. The trial court denied Goodman's motion to suppress, and he was convicted in a jury trial.

## STANDING

The State asserts on appeal that Goodman lacks standing to challenge the search of the suitcase. As standing is a substantive rather than a jurisdictional issue, no constitutional rights are involved when the State raises the issue. *State v. Grundy,* 25 Wn. App. 411, 415–16, 607 P.2d 1235 (1980), *review denied,* 95 Wn.2d 1008 (1981). Standing may not be challenged for the first time on appeal.

Nonetheless, under Washington law, a defendant has "automatic standing" to challenge a search and seizure if: (1) possession is an essential element of the offense charged, and (2) the defendant was in possession of the

item at the time it was seized or searched. *State v. Simpson,* 95 Wn.2d 170, 181, 622 P.2d 1199 (1980). Goodman meets both requirements. A mere denial of ownership does not eliminate standing. *State v. Allen,* 93 Wn.2d 170, 172, 606 P.2d 1235 (1980). The State's assertions of voluntary abandonment and police exercise of the community care-taking function are without factual support.

PROBABLE CAUSE

Central to the determination of the propriety of the refusal to suppress a warrantless search is the existence of probable cause to arrest the defendant or to search a given location for contraband or evidence of a crime. If probable cause to arrest and search exists, then it must be determined whether the search is justified as an incident to the arrest or if not, whether exigent circumstances justify the warrantless search. We conclude that the police had probable cause to arrest Goodman and that the discovery and search of the victim's purse in the passenger compartment of Goodman's car was proper as an incident to that arrest,[1] but that police could not validly search the suitcase found in the locked trunk compartment. That search cannot be justified either as an incident to the arrest, or by exigent circumstances.

Warrantless searches and seizures may be permitted within the confines of "a few specifically established and well–delineated exceptions" to the warrant requirements of the Fourth Amendment and Const. art. 1, § 7.[2] *State v. Chrisman,* 100 Wn.2d 814, 817, 676 P.2d 419 (1984); *State v. Houser,* 95 Wn.2d 143, 149, 622 P.2d 1218 (1980). The warrant requirement will be excused only when the societal

---

[1] The State defended the denial of suppression by asserting the "automobile exception" to the requirement of a search warrant and did not argue that the search of the purse could be justified as an incident to the arrest. Nevertheless, this court may affirm if the trial court's judgment is sustainable on any theory. *Bock v. State Bd. of Pilotage Comm'rs,* 91 Wn.2d 94, 586 P.2d 1173 (1978).

[2] At each stage of this case, Goodman has invoked the protections of the Washington Constitution as well as the United States Constitution.

costs of obtaining a warrant outweigh the reasons for seeking the approval of a neutral and detached magistrate. *State v. Houser,* 95 Wn.2d at 149; *State v. Moore,* 29 Wn. App. 354, 358, 628 P.2d 522, *review denied,* 96 Wn.2d 1003 (1981). A warrantless search, like any search, must be based on probable cause, a test of reasonableness. To make a valid warrantless search, an officer must have sufficient reliable information to warrant a person of reasonable caution in believing that evidence of crime would be found in the place to be searched. *Carroll v. United States,* 267 U.S. 132, 149, 69 L. Ed. 543, 45 S. Ct. 280, 39 A.L.R. 790 (1925); *United States v. Freitas,* 716 F.2d 1216, 1220 (9th Cir. 1983); *State v. Southard,* 32 Wn. App. 599, 602, 648 P.2d 504 (1982). An officer may, of course, examine the facts he knows in light of his own experience and expertise. *State v. Cottrell,* 86 Wn.2d 130, 132–33, 542 P.2d 771 (1975). *See generally* 1 W. LaFave, *Search and Seizure* § 3.2(b)–(e) (1978).

The circumstances known to the arresting officers here were that: (1) Goodman gave a vague explanation, which the detective did not think credible, for his presence in the area; (2) Goodman had been circling the immediate area where the suitcase was picked up repeatedly for more than half an hour; (3) Henley got into Goodman's car at an unknown point, then got out and ran to bring back a suitcase; (4) Goodman and Henley gave inconsistent statements about who owned the suitcase and why it was in the trunk; (5) Goodman was on parole; and (6) the events occurred about 1 a.m. in a neighborhood where Goodman did not live.

The basic elements of probable cause have been summarized as follows: An officer must have reasonable grounds to believe that a suspect has committed, is committing, or is about to commit a felony, based on circumstances sufficiently strong to warrant a prudent person in believing the suspect guilty. Probable cause is based upon the totality of facts and circumstances known to the arresting officers. The test is one of reasonableness considering

the time, the place, and the pertinent circumstances, and the officer's special expertise in identifying criminal behavior. *State v. Scott,* 93 Wn.2d 7, 10–11, 604 P.2d 943, *cert. denied,* 446 U.S. 920 (1980).

Probable cause is an objective test. Taking the circumstances as a whole, we think that the detective had probable cause to believe a felony had been or was being committed by Goodman and his companion, and that evidence of such a crime would be found in the suitcase secured in the trunk of Goodman's car. The detective's inability to articulate the specific crime he suspected will not defeat that conclusion. As another court has stated, "[W]e would not consider ourselves bound by a police officer's inability to articulate his conclusions if the facts clearly demonstrated the existence of probable cause." *United States v. Day,* 455 F.2d 454, 456 (3d Cir. 1972). *Accord, State v. Vanzant,* 14 Wn. App. 679, 544 P.2d 786 (1975). If the standard is met, it will not matter that the officer could not say at the moment of his search whether he suspected, for example, burglary, robbery or armed robbery, or possession of stolen property. *United States ex rel. Frasier v. Henderson,* 464 F.2d 260 (2d Cir. 1972); LaFave, at 485–86. This is especially true where, as here, the known facts could support the elements of closely related or similarly defined crimes. The "every day life" evaluation called for, *State v. Scott, supra,* does not require that type of categorical precision.

The probabilities increased as Goodman's behavior became more suspicious. Jackson's observations meshed with the initial citizen report, and gave him reasonable grounds for further investigation, which then ripened into probable cause. The conflicting statements given about the suitcase further increased the probabilities of criminal activity. Each man denied knowledge of the suitcase, which Jackson knew from his own observation to be untrue. The denials, lies, and eventual explanation which Jackson did not believe turned what could have been innocent and fully protected behavior into additional circumstantial evidence

implicating Goodman in the suspected criminal activity. Improbable explanations and false answers to police questions about lawful possession may give rise to probable cause. *State v. Sinclair,* 11 Wn. App. 523, 531, 523 P.2d 1209 (1974); *State v. Haverty,* 3 Wn. App. 495, 498, 475 P.2d 887 (1970). *See also State v. Bryan,* 40 Wn. App. 366, 698 P.2d 1084 (1985), where a known lie combined with circumstantial evidence to provide probable cause for arrest. Where under the circumstances there is no discernible innocent meaning, responses an officer knows through his personal knowledge are false or contradictory "may reasonably be taken to indicate consciousness of guilt." *People v. Superior Court,* 7 Cal. 3d 186, 197, 496 P.2d 1205, 1213, 101 Cal. Rptr. 837 (1972). *See also United States v. Herbst,* 641 F.2d 1161 (5th Cir.), *cert. denied,* 454 U.S. 851, 70 L. Ed. 2d 141, 102 S. Ct. 292 (1981); *State v. Valenzuela,* 121 Ariz. 274, 589 P.2d 1306 (1979); LaFave, § 3.6(f).

An officer's particular knowledge or special expertise is an important factor in probable cause determinations. *State v. Scott,* 93 Wn.2d at 11; *State v. Cottrell,* 86 Wn.2d at 133. It may also include knowledge of a particular suspect's criminal proclivities, which though not sufficient of itself for a finding of probable cause, may be a factor in that determination. *State v. Hoffman,* 64 Wn.2d 445, 392 P.2d 237 (1964).

We thus conclude that the totality of circumstances in the officer's knowledge constituted probable cause to believe a felony had been or was being committed, and that evidence of crime would be found in the suitcase in the trunk of the car.

## RETROACTIVITY

█ Goodman argues that under *State v. Ringer,* 100 Wn.2d 686, 674 P.2d 1240 (1983), the warrantless search incident to arrest was invalid under state law and all evidence thus seized must be suppressed. Because Goodman was convicted before our Supreme Court decided *Ringer,* we must consider whether *Ringer* should be applied retro-

actively. We are persuaded by Division One's analysis in *State v. Jordan,* 39 Wn. App. 530, 694 P.2d 47 (1985), and conclude that it should not. In *Jordan,* the court concluded that *Ringer*'s abrupt shift from reliance on federal precedent under the Fourth Amendment to a different analysis under article 1, section 7 of the Washington Constitution represented "a clear break with the past." *State v. Jordan,* 39 Wn. App. at 544–45. As such, it should be applied prospectively only, and not to cases tried before the ruling was made. *See United States v. Johnson,* 457 U.S. 537, 73 L. Ed. 2d 202, 102 S. Ct. 2579 (1982). Consideration of the reliance on federal precedent by law enforcement authorities and the effect on the administration of justice further convince us that a retroactive application of *Ringer* would not be appropriate. *State v. Jordan,* 39 Wn. App. at 545–46. *See also Stovall v. Denno,* 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967 (1967).

### AUTOMOBILE SEARCH

Having determined that the police had probable cause to arrest and search, we must determine whether the warrantless search of Goodman's car was justified under the law in effect at the time. In *New York v. Belton,* 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860 (1981), decided just over 1 year before Goodman's arrest, the Supreme Court held that the passenger compartment of an automobile may be lawfully searched in a search incident to arrest when the occupants are subjected to lawful custodial arrest. Washington courts have previously relied on *Belton* and other Fourth Amendment cases, and we do so again here. *See State v. Jordan, supra; State v. Helfrich,* 33 Wn. App. 338, 656 P.2d 506 (1982); *State v. Quaring,* 32 Wn. App. 728, 649 P.2d 173 (1982); *State v. Callahan,* 31 Wn. App. 710, 644 P.2d 735 (1982). Under *Belton,* the purse and its contents were properly admitted.

### SEARCH OF SUITCASE

The trial court relied on *United States v. Ross,* 456 U.S. 798, 72 L. Ed. 2d 572, 102 S. Ct. 2157 (1982) to uphold the

search of the suitcase. We disagree with the trial judge's interpretation of *Ross,* and think that *Arkansas v. Sanders,* 442 U.S. 753, 61 L. Ed. 2d 235, 99 S. Ct. 2586 (1979) requires suppression of the suitcase and its contents.

▆▆ The search of the suitcase cannot be considered part of a lawful search incident to arrest, as no immediate danger of destruction was presented, and, because the suitcase was in the trunk, infringement of the suspects' privacy interests was not justified. *New York v. Belton,* 453 U.S. at 461. In *United States v. Ross, supra,* the Court concluded that the scope of a warrantless automobile search is defined not by the nature of the container in which the contraband is found but rather by the object of the search and the location in which there is probable cause to believe contraband or evidence may be found. If there is probable cause to believe that the automobile contains contraband, then the search properly extends to the entire vehicle and any containers found therein. The Court was careful to point out, however, that a search of the entire vehicle and all of its contents cannot be justified when the suspected locus of the contraband is a particular container placed in the trunk of the vehicle. *United States v. Ross,* 456 U.S. at 824.

In *Ross* the police had information giving rise to the level of probable cause that the defendant was selling drugs out of his automobile. Police knew that the narcotics were located in the automobile but did not know that the narcotics were contained in any specific containers, thus, the permissible scope of the search extended to the entire area of the automobile in which narcotics could be found.

This case more closely parallels *Arkansas v. Sanders, supra,* where officers' suspicions had focused on a particular green suitcase which Sanders claimed at an airport baggage counter, carried with him, and put in the trunk of a taxi. 442 U.S. at 755, 762. Having probable cause but lacking exigent circumstances to search a particular container, police cannot use the so-called "automobile exception" to justify a warrantless search of the container (here the suitcase), even though it is in an automobile. *See also United*

*States v. Chadwick,* 433 U.S. 1, 53 L. Ed. 2d 538, 97 S. Ct. 2476 (1977). As in *Sanders* and *Chadwick,* "'there was not the slightest danger that [the luggage] or its contents could have been removed before a valid search warrant could be obtained.'" *Arkansas v. Sanders,* 442 U.S. at 762, 763–64; *United States v. Chadwick,* 433 U.S. at 13.

We recognize that there is no issue of a pretext here; Detective Jackson did not have the opportunity to seize the suitcase before it was put in the trunk because of his distance from Goodman's car. Nonetheless, the nature of a search does not change simply because the item is put into a vehicle. *Arkansas v. Sanders,* 442 U.S. at 762–66. The facts before us indicate no grounds for a warrantless search of the suitcase.[3]

### PREJUDICIAL AND HARMLESS ERROR

The failure to suppress the evidence of the contents of the suitcase prejudiced the defendant and requires reversal and remand of the conviction for the possession of stolen property. From the record before us there is no other evidence to establish that Goodman possessed stolen property in excess of $250. Although the error is of constitutional magnitude, we are satisfied that with respect to the burglary charge, the error was harmless.

■ An error of constitutional magnitude is prejudicial unless this court can say beyond a reasonable doubt that the error did not contribute to the guilty verdict or that the untainted evidence is so overwhelming it necessarily leads to guilt. *State v. Acosta,* 101 Wn.2d 612, 683 P.2d 1069 (1984).

Here there is no question that the victim's home was

---

[3]If here the suitcase had been placed in the passenger compartment accessible to the defendant and his companion, so that its contents could have been altered and secreted elsewhere in the vehicle, the object of the search possibly could have been expanded to portions of the vehicle and its containers. However, the suitcase was isolated from the defendant and his passenger from the time it was placed in the trunk of the vehicle until its seizure. These facts among others distinguish this case from *State v. Southard,* 32 Wn. App. 599, 648 P.2d 504 (1982), referred to in the dissenting opinion.

burglarized. Goodman's presence near the scene of the burglary in the early morning hours of darkness without any reasonable explanation of why he was there, coupled with his untruthful and evasive answers to the police officer's questions, clearly implicated him as a participant in the burglary. Within minutes of the entry into the home, Goodman was in possession of the victim's purse. We are satisfied beyond a reasonable doubt that this evidence is so overwhelming that it necessarily leads to guilt and that the contents of the suitcase did not contribute to the guilty verdict.

## PRIOR CONVICTIONS

We next consider whether it was error to rule in limine that Goodman's prior convictions for robbery and unlawful possession of a controlled substance would be admissible if he testified in his defense. Lacking an offer of proof of the nature of defendant's testimony, review is precluded. *State v. Austin,* 100 Wn.2d 889, 897, 676 P.2d 456 (1984). The trial court must be able to evaluate the significance of the defendant's testimony before it can make a proper ruling, especially in cases such as this where the defendant's testimony may be central to his defense. Because of this need and the potential for abuse, an offer of proof is essential. *State v. LeFever,* 102 Wn.2d 777, 785–86, 690 P.2d 574 (1984). *See also Luce v. United States,* 469 U.S. 38, 83 L. Ed. 2d 443, 105 S. Ct. 460 (1984) (review precluded if defendant does not testify).

Judgment of guilt of the crime of burglary in the second degree is affirmed, and the judgment of guilt of the crime of possession of stolen property is reversed.

PETRIE, J. Pro Tem., concurs.

REED, A.C.J. (concurring in part; dissenting in part)—At the outset I would affirm both convictions, using the rationale of *State v. Briceno,* 33 Wn. App. 101, 651 P.2d 1093 (1982). Because the majority affirms the burglary conviction and Goodman received concurrent sentences, we

need not address his possession of stolen property conviction.

I agree with the majority that *State v. Ringer,* 100 Wn.2d 686, 674 P.2d 1240 (1983) is not retroactive[4] and that the totality of the circumstances gave police probable cause, both to arrest Goodman and to believe the suitcase contained evidence of a crime. I do not agree, however, with its holding that the search of the suitcase violated Goodman's constitutional rights.

The majority attempts to distinguish this case from *United States v. Ross,* 456 U.S. 798, 72 L. Ed. 2d 572, 102 S. Ct. 2157 (1982) on the ground that the officers' suspicion focused on a particular closed container, as was the situation in *Arkansas v. Sanders,* 442 U.S. 753, 61 L. Ed. 2d 235, 99 S. Ct. 2586 (1979) and *United States v. Chadwick,* 433 U.S. 1, 53 L. Ed. 2d 538, 97 S. Ct. 2476 (1977). However the United States Supreme Court in *Ross* held that a container may be searched without a warrant if there is probable cause to search *the automobile in which it rides* rather than *just* to search the container itself. *Ross,* 456 U.S. at 823–24; *United States v. Johns,* ___ U.S. ___, 83 L. Ed. 2d 890, 895–96, 105 S. Ct. 881 (1985). Hence, this court in the past has recognized that "probable cause to believe defendant's car carried [a container holding evidence of a crime] in no way changes our analysis" of whether probable cause also existed to search that container. *State v. Southard,* 32 Wn. App. 599, 605 n.4, 648 P.2d 504 (1982). Contrary to the view of the majority, the outcome of the instant case is controlled by *Ross,* not *Sanders* and *Chadwick,* because probable cause existed to search defendant's car *as well* as his suitcase.

Detective Jackson knew that for some time Goodman had been operating his car in a suspicious manner out of

---

[4]Should our position with respect to *Ringer's* retroactivity be held incorrect, this should dictate only a remand to determine whether it was feasible for the officers to get a telephonic warrant. That issue was not raised in the trial court— neither was it in *Ringer* when that case was in this court.

the policeman's view. By the time the officer saw the suitcase being loaded into the car's trunk and heard defendant's evasive answers, he had good reason to suspect that the car was an instrumentality of Goodman's criminal activities and that a search of the car itself would disclose additional evidence. That of course proved to be true when the officers discovered the purse and credit cards in the passenger portion of the vehicle.

The officers' suspicion did not focus *solely* on a container as in *Sanders* and *Chadwick,* for it was not obvious that all the evidence would be in the suitcase rather than secreted elsewhere in the vehicle. *See United States v. Shepherd,* 714 F.2d 316, 323 (4th Cir. 1983), *cert. denied,* 466 U.S. 938 (1984); *United States v. Johns,* 707 F.2d 1093, 1097 (9th Cir. 1983), *rev'd on other grounds,* 87 L. Ed. 2d 890 (1985).[5] Although the majority states that Goodman's suspicious use of his vehicle contributed to its finding of probable cause to arrest him, it ignores the role of defendant's car when analyzing whether there was probable cause to believe the *vehicle* contained evidence of Goodman's crimes. Indeed it was defendant's behavior while driving the vehicle that aroused suspicion initially; and the loading of the suitcase was but *one* factor among many in the totality of circumstances surrounding Goodman's observed activities.

Further, there is no suggestion here, as there was in *Sanders,* that the officers awaited placement of the suitcase in the car in order to vault themselves into a *"Carroll"* search situation. Their first glimpse of the case came almost simultaneously with its being placed in the trunk. There was no meaningful opportunity to seize it before this became a fait accompli.

Here, there was probable cause to search the car, and therefore the suitcase secreted within it, because the total-

---

[5]Although the Supreme Court in *Johns* reversed the Ninth Circuit on other grounds, it expressly approved of that court's analysis regarding the application of *Ross. United States v. Johns,* 87 L. Ed. 2d at 895.

ity of the circumstances within the knowledge of the officer supported a reasonable belief that the *vehicle* contained evidence of a crime. *See Carroll v. United States,* 267 U.S. 132, 149, 69 L. Ed. 543, 45 S. Ct. 280, 39 A.L.R. 790 (1925); *State v. Donohoe,* 39 Wn. App. 778, 780, 695 P.2d 150, *review denied,* 103 Wn.2d 1032 (1985).

I would affirm both convictions.

Review denied by Supreme Court February 21, 1986.