118 P.3d 419 (2005)
STATE of Washington, Respondent,
v.
Danny Wayne EVANS, Appellant.
No. 31451-7-II.
Court of Appeals of Washington, Division 2.
August 23, 2005.
*420 Heiko Philipp Coppola, Attorney at Law, Cowlitz Co. Pros. Aty. Offc., Kelso, WA, for Respondent.
John A. Hays, Attorney at Law, Longview, WA, for Appellant.
HOUGHTON, J.
¶ 1 A jury convicted Danny Evans of manufacturing methamphetamine and unlawful possession of methamphetamine with intent to deliver. He appeals, arguing that the trial court erred when it (1) denied his motion for a Franks[1] hearing, (2) determined that denial of ownership constitutes abandonment, and (3) sentenced him under former RCW 69.50.401(a)(1)(ii) (2002). He further argues that the prosecutor elicited a comment on his exercise of his right to remain silent. We affirm the conviction, but vacate the sentence and remand for resentencing.

*421 FACTS
¶ 2 On October 23, 2002, police officers arrested Gary Lindsey for second degree attempted burglary. In exchange for leniency, Lindsey offered information about Evans, his methamphetamine dealer.
¶ 3 Detective Michael Cowan filed an affidavit, requesting a search warrant for a home and detached structure at 1101 Cowlitz Way. He also requested a search warrant for Evans, the property's owner.
¶ 4 The affidavit described Lindsey's interactions with Evans:
Lindsey told me he has purchased crystal methamphetamine from a Dan Evans and "Scott" [an accomplice] who "cook", manufacture methamphetamine using the "red-P" method in a small ... dwelling/structure located behind Evans' residence at 1101 Cowlitz Way.... Lindsey told me that on the evening of 10/21/2002 he went to this dwelling/structure behind 1101 Cowlitz Way to purchase methamphetamine. He contacted Scott at the dwelling and purchased $20 worth of methamphetamine. During this contact Lindsey asked to use the bathroom. Scott let Lindsey into the dwelling/structure to use the bathroom. Lindsey said he observed 4-5 metal cans he thought contained "Acetone", 3-4 off green in color "Ball" Mason jars of the quart size. He said he had supplied these jars to Evans earlier. Lindsey described the jars as having a clear to yellowish liquid into [sic] them. Lindsey said one of the jars had [two] separate layers of an unknown liquid inside. Lindsey stated Scott was boiling an unknown substance that "looked like water" in [a] Corning cook ware [sic] sauce pan "breaking pills down" which he pulled out of the stove. Lindsey stated he saw a dark red in color substance in coffee filers and a jar.
Clerk's Papers (CP) at 118.
¶ 5 Further, Cowan explained that "Lindsey is aware that if the information provided is not correct, he will not receive leniency for his pending felony charge." CP at 119. He also indicated that Lindsey's information corroborated his investigation on other charges. But he did not list Lindsey's prior convictions for six counts of forgery and two counts of second degree theft.
¶ 6 Task Force members executed the warrants at 1101 Cowlitz Way, where they observed a residence and a detached, converted garage.
¶ 7 When entering the residence, the police detected a noticeable chemical odor. The police arrested Evans as he left the residence and then placed him in a patrol car. Cowan read him the Miranda[2] advisements.
¶ 8 Officers discovered evidence of methamphetamine production in the garage. They found a hot plate, gas mask, filters, Red Devil lye, butane, a bag of flares, and a condenser tube hose. Testing revealed Evans's fingerprints on two flasks and a condenser tube. The officers also recovered a container with layers of clear, colorless liquids. Later tests confirmed that the item contained methamphetamine base.
¶ 9 Bryan Kerr was present during the search. Officers learned that Kerr rented the residence. In his interview with Sergeant Kevin Tate, Kerr explained that Evans generally carried a briefcase.[3] Tate "had the impression that this [briefcase] was part of the business that Dan Evans was involved in," specifically, the "[m]ethamphetamine drug dealing business." Report of Proceedings (RP) (Taped) at 53.
¶ 10 Tate observed a truck parked in the driveway. Inside, he saw the briefcase Kerr described. Evans was the truck's registered owner. After confirming that Evans had been given Miranda warnings, Tate began interviewing him. Evans stated that "[I don't] want to talk about any details.... [T]he police are gonna do what the police are *422 gonna do, and I don't want to talk about it."[4] RP (Taped) at 56.
¶ 11 Tate then asked permission to search the truck. He explained that the truck was not included in the search warrant but that Evans could give consent. Evans asked what Tate wanted to search. Tate stated that he wanted to "search the passenger compartment of the car." RP (Taped) at 58. Evans gave Tate consent to perform a "limited search" of the truck, provided that he could be present. RP (Taped) at 59.
¶ 12 In the back seat of the truck, Tate saw the briefcase. It was locked. He asked whether the briefcase belonged to Evans and whether he had a key. Evans stated that he did not own the briefcase, that he did not know the owner, and that he could not give permission to open the briefcase because it did not belong to him.
¶ 13 Tate seized the briefcase, telling Evans that he would apply for a search warrant. Evans objected, saying, "I don't want you to do that. I didn't give you permission for that." RP (Taped) at 62-63. Tate then stopped searching the truck.
¶ 14 After a drug-sniffing dog gave a positive "hit" on the briefcase, Tate obtained a search warrant. Inside, he found a bank foreclosure notice for the residence at 1101 Cowlitz Way, red phosphorous, and scales. The briefcase also contained a white crystal substance, later identified as methamphetamine hydrochloride.
¶ 15 The State charged Evans with manufacture of methamphetamine (count I) and unlawful possession of methamphetamine with intent to deliver (count II).
¶ 16 Evans moved to suppress the evidence found in the briefcase. He also filed a motion to suppress all evidence obtained through the search warrant, arguing that the supporting affidavit did not meet the Aguilar-Spinelli[5] reliability prong. He then moved for a Franks hearing, claiming that the affiant deliberately omitted material facts regarding Lindsey's prior convictions for crimes of dishonesty. The court denied the motions.
¶ 17 At trial, Tate testified that Evans received Miranda warnings. Then the prosecutor and Tate discussed Evans's further questioning and his responses.
¶ 18 Outside the jury's presence, Evans moved for dismissal without prejudice or a mistrial, claiming that the prosecutor solicited a comment on Evans's exercise of his right to remain silent. The trial court denied the motion.
¶ 19 The jury convicted Evans of manufacturing methamphetamine "as charged in Count I" and of unlawful possession of methamphetamine with intent to deliver "as charged in Count II." Count I charged him with manufacturing methamphetamine "contrary to [former] RCW 69.50.401(a)(1)," and count II charged him with possession of methamphetamine with intent to deliver "contrary to [former] RCW 69.50.401(a)." CP at 1, 2.
¶ 20 In a posttrial motion, Evans (1) renewed his two motions to suppress, (2) asked the court to treat the two counts as the same criminal conduct in sentencing, and (3) argued that the court could not sentence him under former RCW 69.50.401(a)(1)(ii) because the jury verdict did not specifically identify the unlawful substance.
¶ 21 The trial court denied the renewed motions to suppress. It then determined that the two counts were the same criminal conduct. *423 It sentenced Evans to 60 months, a term within his standard range.[6]
¶ 22 He appeals.

ANALYSIS

I. Franks Hearing
¶ 23 Evans first contends that the trial court erred when it denied his motion for a Franks hearing. He asserts that Cowan recklessly omitted a material fact, Lindsey's prior convictions for crimes of dishonesty. He argues that these prior convictions were material because they undercut the indicia of reliability required by Aguilar-Spinelli.
¶ 24 At the defendant's request, the court must hold a Franks hearing if the defendant makes a preliminary showing that the affiant included a false statement knowingly and intentionally, or with reckless disregard for the truth, and the false statement was necessary to a finding of probable cause. 438 U.S. at 155-56, 98 S.Ct. 2674; State v. Vickers, 148 Wash.2d 91, 114, 59 P.3d 58 (2002). The Franks rule extends to material omissions. State v. Garrison, 118 Wash.2d 870, 873, 827 P.2d 1388 (1992).
¶ 25 "`[A]llegations of negligence or innocent mistake are insufficient.'" Garrison, 118 Wash.2d at 872, 827 P.2d 1388 (quoting Franks, 438 U.S. at 171, 98 S.Ct. 2674). Rather, the defendant must support the allegations with an offer of proof. Garrison, 118 Wash.2d at 872, 827 P.2d 1388. If the defendant makes the requisite preliminary showing and establishes the allegations at the hearing by a preponderance of the evidence, the trial court includes the omitted material in the affidavit to determine whether it supports a finding of probable cause. State v. Chenoweth, 127 Wash.App. 444, 111 P.3d 1217, 1223 (2005). If the modified affidavit fails to support probable cause, the search warrant is invalid and all evidence obtained through the warrant is excluded. Chenoweth, 111 P.3d at 1223-24.
¶ 26 In his motion for a Franks hearing, Evans asserted that Cowan "chose to omit" Lindsey's prior convictions for six counts of forgery and two counts of second degree theft. CP at 27. Additionally, he claimed the following:
Herein we have established that specific omissions of fact have been made by the police in the application for this search warrant. Lindsey at the same time that he was being vouched for to the magistrate as a credible and reliable source was known to the police and the Prosecuting Attorney of this county as a repeatedly convicted thief. He was known to the police and the prosecuting attorney to be actively stained by findings of criminal falsehood.
CP at 45.
¶ 27 The trial court denied this motion, explaining that Evans failed to make the requisite preliminary showing:
Some of the matters raised by the defense might negate probable cause. Both the informant's criminal history and pending CCSO investigation (by Deputy Merkle) are relevant to the probable cause inquiry. However, while counsel presents a persuasive argument that Officer [sic] Cowan ... could have known and maybe should have known of these matters, the offers of proof do not rise to the level of intentional or reckless disregard. While a defendant's criminal history is always available to the police and prosecutors, it is not per se reckless not to run that criminal history (NCIC) and to fail to present it to the magistrate.
CP at 53. Further, the trial court ruled that even if Evans had met the preliminary showing, his argument would still fail:
[T]his Court does not find that any of the omitted information was "necessary" to probable case [sic]. Stated differently, even had the information been included in the affidavit, the affidavit information would have been sufficient to establish probable cause. The magistrate was aware that the informant had been involved *424 in criminal activity and was seeking leniency. In addition, any informant who personally observed and even assisted in the manufacturing of methamphetamine would have had close ties to the drug world and would most likely have a criminal history. The informant's criminal history cuts both ways and cannot be said to vitiate probable cause.
CP at 53-54.
¶ 28 Here, Evans argues that Cowan "chose to omit" information regarding Lindsey's reliability. As the trial court correctly noted, while Cowan "could have known and maybe should have known" of Lindsey's criminal history, "the offers of proof do not rise to the level of intentional or reckless disregard." CP at 53. At most, Evans's assertions support a finding of negligence. But allegations of negligence fail to meet the preliminary showing. Garrison, 118 Wash.2d at 872, 827 P.2d 1388. Accordingly, the trial court properly denied Evans's motion for a Franks hearing.

II. Abandonment
¶ 29 Evans next contends that the trial court improperly denied his motion to suppress the evidence found in the briefcase.[7]
¶ 30 After a suppression hearing, we examine whether substantial evidence supports the trial courts challenged findings of fact and, in turn, whether the findings support the conclusions of law. State v. Mendez, 137 Wash.2d 208, 214, 970 P.2d 722 (1999). Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the finding's truth. State v. Solomon, 114 Wash.App. 781, 789, 60 P.3d 1215 (2002), review denied, 149 Wash.2d 1025, 72 P.3d 763 (2003). We treat unchallenged findings of fact as verities on appeal, we and review conclusions of law de novo. State v. Stevenson, ___ Wash.App. ___, 114 P.3d 699, 706 (2005).
¶ 31 Here, Evans did not assign error to any finding of fact. Instead, he challenges the trial courts legal conclusion that his denial of ownership constituted abandonment, allowing the officer to seize the briefcase.
¶ 32 The Fourth Amendment of the United States Constitution protects the "right of the people to be secure in their persons ... and effects, against unreasonable searches and seizures." Article I, section 7 of the Washington Constitution guards against unlawful searches and seizures, providing greater protection than the Fourth Amendment. State v. Hendrickson, 129 Wash.2d 61, 69-70 n. 1, 917 P.2d 563 (1996). Constitutional protections do not extend to abandoned property unless the abandonment is the product of police coercion or other unlawful police action. 1 WAYNE R. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 2.6(b), at 670, 683 (4th ed.2004); see also State v. Reynolds, 144 Wash.2d 282, 287, 27 P.3d 200 (2001).
¶ 33 Washington courts have examined the abandonment doctrine. See e.g. Reynolds, 144 Wash.2d at 287, 27 P.3d 200 (officers may search voluntarily abandoned property without raising constitutional concerns). But our courts have not analyzed whether one can disclaim property but still challenge a later search, where the disclaimed property remained in an area where one has a reasonable expectation of privacy.[8]
¶ 34 Other jurisdictions are split on this issue. The majority of courts have held that a person abandons the property with a disclaimer of ownership made in response to a police inquiry.[9]
*425 ¶ 35 For example, in State v. Huffman, 169 Ariz. 465, 820 P.2d 329, 331 (1991), the Arizona Supreme Court held that "denial of ownership, when questioned [by police], constitutes abandonment." A police officer recognized Huffman, who had an outstanding arrest warrant, as Huffman rode in a in a car. Huffman, 820 P.2d at 330. After obtaining the driver's consent to search the car, an officer found a key to the Willow Motel. Huffman, 820 P.2d at 330. Both Huffman and the driver denied ownership of the key. Huffman, 820 P.2d at 330. In the motel room, the police found cocaine and other drug paraphernalia. Huffman, 820 P.2d at 330.
¶ 36 The Arizona Supreme Court held that Huffman "denied any interest in the key to the motel room, thereby relinquishing any expectation of privacy." Huffman, 820 P.2d at 330. It noted that denial of ownership, coupled with police inquiry, constitutes abandonment. Huffman, 820 P.2d at 331.
¶ 37 In contrast, other jurisdictions have determined that denial of ownership, in response to police inquiry, is not abandonment.[10] For example, in State v. Huether, 453 N.W.2d 778, 780 (N.D.1990), an officer stopped Huether for speeding and detected the odor of alcohol. Huether consented to the officer's search for open containers. Huether, 453 N.W.2d at 780. The officer saw a small paper bag pushed partly under the front seat. Huether, 453 N.W.2d at 780. Later tests confirmed that the bag contained amphetamine hydrochloride, a controlled substance. Huether, 453 N.W.2d at 780. Huether denied ownership of the bag and knowledge of its contents. Huether, 453 N.W.2d at 780. The North Dakota Supreme Court held that Huether did not abandon his reasonable expectation of privacy when he disclaimed ownership. Huether, 453 N.W.2d at 781-82.
¶ 38 Evans cites a case from our court to support his contention. In State v. Goodman, a police officer observed two suspicious men drive down the street, stop, turn off the lights, and open the trunk. 42 Wash.App. 331, 333, 711 P.2d 1057 (1985), review denied, 105 Wash.2d 1012 (1986). One man exited the car and returned with a suitcase, placing it in the trunk. Goodman, 42 Wash.App. at 333, 711 P.2d 1057. The officer stopped the vehicle and asked about the suitcase. Goodman, 42 Wash.App. at 333, 711 P.2d 1057. Both men denied ownership. Goodman, 42 Wash.App. at 333, 711 P.2d 1057.
¶ 39 When examining whether the defendant had standing, this court noted that the "State's assertions of voluntary abandonment ... are without factual support." Goodman, 42 Wash.App. at 335, 711 P.2d 1057. The Goodman court did not face the issue before us and its comments regarding abandonment are dicta.
¶ 40 We are persuaded by the majority view. When a defendant disavows ownership of an item in response to police questioning, he abandons any privacy interest in that item. Here, when Evans denied (1) ownership of the briefcase, (2) knowledge of the owner, and (3) ability to authorize its opening, he relinquished any expectation of privacy. This constitutes abandonment, regardless of any expectation of privacy in the truck, for which he consented to a limited search.[11]

III. Comment on the Right to Remain Silent
¶ 41 Evans further contends that the State violated his right to remain silent when *426 it elicited testimony regarding his exercise of this right.
¶ 42 The Fifth Amendment of the United States Constitution states, in part, that no person "shall be compelled in any criminal case to be a witness against himself." In a similar provision, article I, section 9 of the Washington Constitution reads: "[n]o person shall be compelled in any criminal case to give evidence against himself." Washington courts give the same interpretation to both clauses. State v. Easter, 130 Wash.2d 228, 235, 922 P.2d 1285 (1996).
¶ 43 The right to remain silent applies in both pre- and post-arrest situations. Easter, 130 Wash.2d at 243, 922 P.2d 1285. The State cannot portray the exercise of this right as substantive evidence of guilt. State v. Romero, 113 Wash.App. 779, 787, 54 P.3d 1255 (2002).
¶ 44 Accordingly, the State cannot seek comments on a defendant's silence to infer guilt. Easter, 130 Wash.2d at 236, 922 P.2d 1285. "A comment on an accused's silence occurs when used to the State's advantage either as substantive evidence of guilt or to suggest to the jury that the silence was an admission of guilt." State v. Lewis, 130 Wash.2d 700, 707, 927 P.2d 235 (1996). Subject to the rules of evidence, introduction of nontestimonial evidence such as demeanor and conduct is proper. Easter, 130 Wash.2d at 243, 922 P.2d 1285. And "a mere reference to silence which is not a `comment' on the silence is not reversible error absent a showing of prejudice." Lewis, 130 Wash.2d at 706-07, 927 P.2d 235.
¶ 45 At trial, Tate testified about his interview with Evans. He explained that Evans received the Miranda advisements. The prosecutor then asked Tate the following questions:
Q ... [D]id you ask Mr. Evans ... any questions regarding [a] clandestine methamphetamine lab?
A Yeah, I started to ask some of those questions. I asked about, "You know, we're processing a lab here, ... do you want to talk to me about that?" I asked some of those type questions. I also asked about knowledge issues.
Q Okay. What ... exactly did he tell you with respect to ... [the] search that was being conducted at that time?
A ... [H]e didn't answer specifically ... about those other than to say we're going to do what we're going to do.
Q Okay.
A Meaning police, you know, you guys are going to do ... what we're going to do.
II RP (Trial) at 178.
¶ 46 Defense counsel lodged a timely objection. Outside the jury's presence, he moved for dismissal without prejudice or a mistrial. The court took the matter under advisement, stating, "I was quite surprised at the direct examination of Sgt. Tate as it relates to what the defendant said because Sgt. Tate said essentially  ... I mean, there were red flags for me as soon as the question was asked  essentially said he didn't answer questions." II RP (Trial) at 216-17.
¶ 47 In an oral ruling, however, the trial court denied the motion. After reviewing the transcript, the court explained, "the wording is key. He didn't answer that question specifically, he said, X. That is different than saying: He didn't answer the question. I think it is different enough to avoid the problem." III RP (Trial) at 295. We agree with the trial court.
¶ 48 Here, Tate's testimony does not amount to a comment on the exercise of the right to remain silent. Tate did not testify that Evans refused to answer questions. Rather, he stated that Evans merely said, "you guys are going to do ... what we're going to do." II RP (Trial) at 178. Although this may portray Evans as recalcitrant, the State did not use the statement as substantive evidence of guilt. Evans's argument fails.

IV. Former RCW 69.50.401
¶ 49 Finally, Evans contends that the trial court erroneously sentenced him under former RCW 69.50.401(a)(1)(ii),[12] *427 where the verdict did not specifically identify the controlled substance. He further argues that when the trial court, rather than the jury, identified the controlled substance for sentencing purposes, it violated his right to a jury trial under Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).
¶ 50 Former RCW 69.50.401 provides, in relevant part:
(a) Except as authorized by this chapter, it is unlawful for any person to manufacture ... or possess with intent to ... deliver, a controlled substance.
(1) Any person who violates this subsection with respect to:
....
(ii) amphetamine or methamphetamine, is guilty of a crime and upon conviction may be imprisonment for not more than ten years....
(iii) any other controlled substance classified in Schedule I, II, or III, is guilty of a crime and upon conviction may be imprisoned for not more than five years.
¶ 51 We recently addressed interpretation of former RCW 69.50.401(a)(1)(ii) and (iii) in State v. Morris, 123 Wash.App. 467, 472-73, 98 P.3d 513 (2004). There, we held that the language of former RCW 69.50.401(a)(1)(ii) is "unambiguous," such that "its prohibition only covers methamphetamine in its pure form, its base" and not "methamphetamine hydrochloride." Morris, 123 Wash.App. at 474, 98 P.3d 513; cf. State v. Cromwell, 127 Wash.App. 746, 112 P.3d 1273, 1275 (2005) (Division One opinion disagreeing with Morris, concluding that "the Legislature intended to penalize the possession with intent to deliver ... of ... methamphetamine in any form more harshly than the possession with intent and delivery of any other controlled substances listed in the Schedules").
¶ 52 Our Supreme Court addressed a similar issue in State v. Goodman, 150 Wash.2d 774, 83 P.3d 410 (2004), a case that pre-dates the Blakely decision. By amended information, the State charged Goodman with "`possess[ion of] a controlled substance with intent to deliver, to wit: meth.'" Goodman, 150 Wash.2d at 779, 83 P.3d 410 (quoting Goodman CP at 26). On appeal, Goodman claimed that the amended information lacked an essential element, the identity of the controlled substance. Goodman, 150 Wash.2d at 784, 786, 83 P.3d 410.
¶ 53 Citing Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000),[13] the Court held that "the identity of the controlled substance is an element of the offense where it aggravates the maximum sentence with which the court may sentence a defendant."[14]Goodman, 150 Wash.2d at 785-86, 83 P.3d 410.
¶ 54 This conclusion comports with the United States Supreme Court's holding in Blakely. As defined in Blakely, the "statutory maximum" is "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." 542 U.S. at ___, 124 S.Ct. at 2537 (emphasis omitted).
¶ 55 Here, the State introduced evidence of the methamphetamine base found in the garage and methamphetamine hydrochloride *428 found in the briefcase. But the verdict forms did not ask the jury to identify the particular substance underlying the convictions. Rather, the jury convicted Evans of manufacturing methamphetamine "as charged in Count I" and of possession of methamphetamine with intent to deliver "as charged in Count II." But count I charged him with manufacturing methamphetamine "contrary to [former] RCW 69.50.401(a)(1)" and count II charged him with possession of methamphetamine with intent to deliver "contrary to [former] RCW 69.50.401(a)."
¶ 56 We cannot discern whether the jury premised the convictions on methamphetamine base, methamphetamine hydrochloride, or both substances. Under Blakely, the trial court invaded the province of the jury when it sentenced Evans under former RCW 69.50.401(a)(1)(ii) because this necessarily involves a factual finding that Evans manufactured and unlawfully possessed methamphetamine base with intent to deliver.[15] Accordingly, we vacate Evans's sentence and remand for resentencing.
¶ 57 In sum, we affirm the conviction, but vacate the sentence and remand for resentencing.
We concur: MORGAN, J., and QUINN-BRINTNALL, C.J.
NOTES
[1] Franks v. Delaware, 438 U.S. 154, 155-56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) (stating that the court must hold an evidentiary hearing when the defendant makes a substantial preliminary showing that the affiant knowingly, intentionally, or with reckless disregard for the truth included in his affidavit a false statement that was necessary to the finding of probable cause).
[2] Miranda v. Arizona, 384 U.S. 436, 444-45, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (holding that custodial statements are inadmissible unless officers warn the individual of the following: (1) he has the right to remain silent, (2) any statement may be used against him, (3) he has the right to an attorney, and (4) he may waive those rights).
[3] This information comes from Tate's suppression hearing testimony. Kerr did not testify at the hearing. But in his trial testimony, Kerr vehemently denied making this statement.
[4] At a CrR 3.5 hearing, the court determined that the police advised Evans of his rights, he understood and selectively exercised those rights, and police honored his choices. Thus, it ruled admissible all relevant statements.
[5] This test derives from two United States Supreme Court cases: Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), and Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Although the United States Supreme Court has rejected the Aguilar-Spinelli test for the "totality-of-the-circumstances" test, Illinois v. Gates, 462 U.S. 213, 230, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), Washington courts adhere to Aguilar-Spinelli. State v. Gaddy, 152 Wash.2d 64, 71 n. 2, 93 P.3d 872 (2004). Under the Aguilar-Spinelli test, an affidavit establishes probable cause if it sets forth the informant's basis of knowledge and veracity. Gaddy, 152 Wash.2d at 71, 93 P.3d 872.
[6] The judgment and sentence does not explicitly state whether the trial court sentenced Evans under former RCW 69.50.401(a)(1)(ii) or (iii). But its calculation of Evans's standard range indicates that it sentenced him under subsection (ii).
[7] The trial court ruled that Evans had automatic standing to challenge the seizure. Because it failed to provide argument or citation to authority, the State appears to concede this issue. See RAP 10.3(a)(5), (b) (respondent's brief must contain "argument in support of the issues presented for review, together with citations to legal authority"). Regardless, we agree with the trial court that Evans has automatic standing. See State v. Jones, 146 Wash.2d 328, 332, 45 P.3d 1062 (2002) (to claim automatic standing, the defendant must be (1) charged with an offense that involves possession as an essential element; and (2) in possession of the item at the time of the challenged search or seizure).
[8] Here, this area is the truck.
[9] See, e.g., Nation v. State, 252 Ga.App. 620, 556 S.E.2d 196 (2001) (when defendant denied ownership of the item searched, he had no legitimate expectation of privacy in the item); State v. Zaitseva, 135 Idaho 11, 13 P.3d 338 (2000) (passenger denied ownership of a bag after police inquiry, thereby abandoning her reasonable expectation of privacy); People v. Williams, 223 A.D.2d 745, 637 N.Y.S.2d 465 (1996) (when defendant disavowed ownership of a bag, he abandoned the item); State v. Linville, 190 Or.App. 185, 78 P.3d 136 (2003) (where police lawfully stopped vehicle and questioned passenger about ownership of cigarette packet, passenger's denial of ownership constituted abandonment).
[10] See, e.g., State v. Casey, 59 N.C.App. 99, 296 S.E.2d 473 (1982) (airline passenger who denied ownership of bag in response to police questioning retained a reasonable expectation of privacy); People v. Cameron, 73 Misc.2d 790, 342 N.Y.S.2d 773 (1973) (denial of ownership is not proof of intent to abandon).
[11] Moreover, we note that the officers obtained a search warrant before opening the briefcase.
[12] Recently, the Legislature significantly amended RCW 69.50.401. Effective July 24, 2005, the statute reads, in relevant part:

(1) Except as authorized by this chapter, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance.
(2) Any person who violates this section with respect to:
....
(b) Amphetamine, including its salts, isomers, and salts of isomers, or methamphetamine, including its salts, isomers, and salts of isomers, is guilty of a class B felony and upon conviction may be imprisoned for not more than ten years....
(c) Any other controlled substance classified in Schedule I, II, or III, is guilty of a class C felony punishable according to chapter 9A.20 RCW;
RCW 69.50.401 (emphasis added).
[13] In Apprendi, the United States Supreme Court held that "any fact [other than a prior conviction] that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. 2348.
[14] Goodman challenged the adequacy of the charging document for the first time on appeal. Goodman, 150 Wash.2d at 787, 83 P.3d 410. Because the necessary facts appeared in the charging document and because Goodman suffered no actual prejudice, the Court affirmed his conviction. Goodman, 150 Wash.2d at 790, 83 P.3d 410.
[15] The trial court sentenced Evans to 60 months, a term within the statutory maximum for purposes of former RCW 69.50.401(a)(1)(iii). But when convicted under subsection (iii), Evans's standard range changes.

For both charges, Evans had an offender score of zero and a seriousness level of VI. See former RCW 9.94A.515 (2002) (classifying the "[m]anufacture ... or possess[ion] with intent to deliver narcotics from Schedule I or II" as a crime with a seriousness level of VI); RCW 69.50.206(d)(2) (classifying "[m]ethamphetamine, its salts, isomers, and salts of its isomers" as Schedule II drugs). Accordingly, Evans has a standard range of 12 to 14 months. RCW 9.94A.510. The imposition of a 60 month sentence violates Evans's Sixth Amendment right to a jury trial.