[No. 10584–1–I.   Division One.   December 8, 1982.]

THE STATE OF WASHINGTON, *Respondent,* v. WILLIAM PAUL HELFRICH, *Appellant.*

*Abbott, Curtis, Galvin & Sandell, Inc., P.S.*, and *Charles Sandell*, for appellant (appointed counsel for appeal).

*Norm Maleng, Prosecuting Attorney,* and *Chris Quinn–Brintnall, Deputy,* for respondent.

SWANSON, J.—William Paul Helfrich appeals a judgment and order deferring imposition of sentence, entered after he was found guilty of possessing a controlled substance with intent to deliver, RCW 69.50.401. He alleges that the trial court erred (1) in finding the police had probable cause to arrest him, (2) in finding he voluntarily consented to a search of his car, and (3) in refusing either to hold an in camera hearing about the identity of an informant or to order disclosure of the informant's identity.

On September 28, 1980, a confidential informant called narcotics detective Oswald. The informant told Oswald that a white man named Bill and an Oriental man would transport for sale approximately 30 pounds of marijuana in a large plastic garbage bag to the Burien Tavern at about 7:30 that evening. The informant further stated that Bill would be driving a black or dark 1968 Pontiac. In previous dealings with the informant, Detective Oswald had observed three "reliability" narcotics purchases by the informant and had received information from the informant which led to an arrest and to the seizure of cocaine.

At 7:35 p.m. on September 28, Detective Oswald observed a dark green 1969 Pontiac arrive at the Burien

Tavern. A white male, later identified as the defendant, was driving the car with an Oriental male passenger. Both men went into the tavern, returned a few minutes later with a third man and entered the Pontiac. Shortly thereafter the third man left the Pontiac and entered another car. About this time, Detective Oswald received a prearranged signal from the informant that the marijuana was inside the Pontiac. Both cars then began to leave the tavern.

As the Pontiac proceeded away from the tavern, a marked police car stopped the Pontiac. The police removed the two occupants from the car and searched them for weapons. The police found marijuana in Helfrich's pocket. Detective Oswald observed a large black plastic garbage bag on the back seat of the car. Later he detected a very strong odor of marijuana inside the car. With Helfrich's permission, Detective Oswald drove the car to the police station. There Helfrich signed a form containing his consent to allow the police to search the car. A subsequent search confirmed that the garbage bag contained a large quantity of marijuana.

■ Helfrich claims the police lacked probable cause to arrest him. We disagree. Police may arrest based on probable cause to believe a felony is being committed. Probable cause for an arrest exists:

> "where the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in a belief that an offense has been . . . committed."

*State v. Fricks,* 91 Wn.2d 391, 398, 588 P.2d 1328 (1979), quoting with approval from *State v. Gluck,* 83 Wn.2d 424, 426–27, 518 P.2d 703 (1974).

■ In the case at bar, probable cause depended in substantial degree upon the reliability of the information provided by the police informant. When information establishing probable cause for the issuance of a search warrant is supplied by an informant, the State must meet the 2–prong test of *Aguilar v. Texas,* 378 U.S. 108, 12 L.

Ed. 2d 723, 84 S. Ct. 1509 (1964), and *Spinelli v. United States,* 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969). The test is equally applicable to determinations of probable cause to make an arrest without a warrant. *McCray v. Illinois,* 386 U.S. 300, 18 L. Ed. 2d 62, 87 S. Ct. 1056 (1967); *State v. Luellen,* 17 Wn. App. 91, 93, 562 P.2d 253 (1977). *See* 1 W. LaFave, *Search and Seizure* § 3.1(b) (1978).

Under the first or "basis of knowledge" prong of the *Aguilar–Spinelli* test, facts must be revealed which permit the judicial officer to determine whether the informant had a basis for his allegation that a certain person had committed a crime. This requirement was satisfied in the case at bench because the informant signaled the police that he had personally seen the marijuana inside the defendant's car.

Under the second or "veracity" prong of the *Aguilar–Spinelli* test, facts must be presented to determine either the inherent credibility of the informant or the reliability of his information on that particular occasion. *McCray v. Illinois, supra; State v. Luellen, supra.* This requirement was also satisfied in this case. The trial court judge correctly observed:

> The veracity prong . . . was fully satisfied by the evidence of the informant's three prior reliability buys, which were performed satisfactorily and made under reasonable police control and supervision. In addition the informant provided reliable information which led to one arrest.
>
> While the veracity prong of *Aguilar* is satisfied by the evidence of the prior arrest and three prior reliability buys alone, in this case additional support for the veracity prong is provided by the independent verification of the informant's tip. The self–verifying details of the informant's prediction as to the arrival of the Pontiac at the Burien Tavern add additional weight to the veracity prong, and confirm the informant's reliability.

Thus, we are persuaded the State has satisfied both prongs of the *Aguilar–Spinelli* test. Furthermore, there is an adequate independent constitutional basis for arresting

Helfrich, based on an investigatory stop, weapons patdown, and the inadvertent discovery of marijuana on him. *See Pennsylvania v. Mimms,* 434 U.S. 106, 54 L. Ed. 2d 331, 98 S. Ct. 330 (1977); *Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). *See also State v. Quaring,* 32 Wn. App. 728, 649 P.2d 173 (1982).

Helfrich also claims he did not voluntarily consent to the search of his automobile. The claim is without merit. Helfrich gave written and oral consent to search his automobile. He was not kept in police custody for a long period of time prior to giving written consent to the search. He conceded on cross examination that he understood the text of the consent form which he signed. He testified that he had completed the 11th grade of high school, that he was advised of his *Miranda* rights at the arrest scene, and that he was told police "had to have my permission or a warrant to search the contents." We agree with the trial court's decision that consent delivered by the defendant was freely and voluntarily given and not the product of coercion.

■ Assuming, arguendo, that Helfrich's consent to search his automobile was coerced, the search was nonetheless lawful. As the United States Supreme Court stated in *New York v. Belton,* 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860 (1981):

> [W]e hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.

(Footnotes omitted.) *New York v. Belton, supra* at 460. *Accord, United States v. Ross,* 456 U.S. 798, 72 L. Ed. 2d 572, 102 S. Ct. 2157 (1982) (where police have probable cause to believe automobile contains contraband, the entire car and all containers inside may lawfully be searched); *State v. Callahan,* 31 Wn. App. 710, 644 P.2d 735 (1982) (Washington State Constitution coextensive with Fourth Amendment insofar as automobile interior searches are concerned). The trial court correctly refused to suppress the marijuana seized from the car incident to Helfrich's

arrest.

Helfrich's final claim is that the trial court erred in refusing either to hold an in camera hearing about the identity of the informant or to order disclosure of the informant's identity. We find no error.

■ What is usually referred to as the informer's privilege is in reality the government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law. *Scher v. United States,* 305 U.S. 251, 254, 83 L. Ed. 151, 154, 59 S. Ct. 174 (1938); *In re Quarles,* 158 U.S. 532, 39 L. Ed. 1080, 15 S. Ct. 959 (1895); *Vogel v. Gruaz,* 110 U.S. 311, 316, 28 L. Ed. 158, 160, 4 S. Ct. 12 (1884). The privilege derives from common law as well as statutory law[1] and court rules.[2]

According to the United States Supreme Court:

> The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.
>
> . . .
>
> We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the

---

[1]RCW 5.60.060(5):

"A public officer shall not be examined as a witness as to communications made to him in official confidence, when the public interest would suffer by the disclosure."

[2]CrR 4.7(f)(2):

"Disclosure of an informant's identity shall not be required where his identity is a prosecution secret and a failure to disclose will not infringe upon the constitutional rights of the defendant. Disclosure of the identity of witnesses to be produced at a hearing or trial shall not be denied."

possible defenses, the possible significance of the inform-er's testimony, and other relevant factors.

*Roviaro v. United States,* 353 U.S. 53, 59–62, 1 L. Ed. 2d 639, 77 S. Ct. 623 (1957).

Generally, the prosecution is privileged to withhold the identity of a confidential informer from an accused. *State v. Harris,* 18 Wn. App. 564, 567, 569 P.2d 84 (1977). The person seeking disclosure has the burden of showing justification for an exception to the general rule. *Harris,* at 567; *State v. Driscoll,* 61 Wn.2d 533, 536, 379 P.2d 206 (1963). When the defendant makes an initial showing that the confidential informant may have evidence relevant to the defendant's innocence, an in camera hearing is necessary. *State v. Allen,* 27 Wn. App. 41, 48, 615 P.2d 526 (1980); *State v. Potter,* 25 Wn. App. 624, 628, 611 P.2d 1282 (1980). Such a hearing is used as a forum for counterposing an asserted privilege against the defendant's evidential need. *Allen,* at 46.

In the case at bar, Helfrich made an inadequate evidentiary showing of circumstances that would require an in camera hearing or disclosure of the informant's identity. The record supports the trial court's conclusion:

> Defendant has failed to make a sufficient showing that the confidential informant's identity or testimony is relevant on the issue of defendant's guilt or innocence. Defendant is not entitled to an in camera hearing on the issue of the informant, since he has done no more than merely allege that the informant's testimony would be relevant on the defense of entrapment. But there has been no showing made that entrapment is a plausible defense.
> Defendant has established through his own testimony, that he was contacted by someone named "Buzz", and asked to bring marijuana to the Burien Tavern. There is no evidence to demonstrate that "Buzz" is the confidential informant. Assuming, *arguendo,* that "Buzz", who was present at the Burien Tavern, is the informant, there is nevertheless no showing that Buzz in any way entrapped the defendant. Defendant's testimony is barren of any suggestion of inducement, of repeated requests

by the informant, or of any unwillingness on the part of the defendant to commit the crime. At most the defendant has established that "Buzz" helped provide the defendant an opportunity to commit the crime.

Defendant has failed, in two respects, to connect the informant to a possible defense on the issue of defendant's guilt or innocence: (1) there has been no showing that "Buzz" is the informant; and (2) even assuming that "Buzz" is the informant there is no evidence whatsoever to support an inference that "Buzz" entrapped the defendant.

The judgment is affirmed.

ANDERSEN, C.J., and CORBETT, J., concur.