STATE of Utah, Plaintiff and Respondent,

v.

Jeffery Scott NIELSEN, Defendant and Appellant.

No. 19688.

Supreme Court of Utah.

Oct. 6, 1986.

Kenneth R. Brown, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Earl F. Dorius, Salt Lake City, for plaintiff and respondent.

ZIMMERMAN, Justice:

Defendant Jeffrey Scott Nielsen appeals from a jury verdict finding him guilty of possessing a controlled substance with intent to distribute for value, a second degree felony. U.C.A., 1953, § 58–37–8(1)(a) (Repl.Vol. 6A, 1974 ed., 1985 Supp.). Nielsen argues that intentional misstatements in the affidavit supporting a search warrant for his residence rendered the warrant invalid under the fourth amendment to the federal constitution and required suppression of the evidence obtained pursuant to that warrant. He also argues that the information in the affidavit supporting the search warrant was insufficient to permit a finding of probable cause and that the trial court's refusal to require disclosure of a confidential informant's identity violated his due process rights. Although the officer's misstatements were intentional and in bad faith, we find that the misstatements did not materially affect the magistrate's finding of probable cause; therefore, the warrant must be sustained as a matter of federal law. Moreover, we find that the information in the affidavit supported the magistrate's finding of probable cause and that the trial court did not err in refusing to require disclosure of the identity of the confidential informant. The conviction is affirmed.

On April 30, 1983, Detective Harold Howard executed an affidavit which was used to obtain a search warrant for Nielsen's

residence. In the affidavit, Detective Howard stated that a confidential informant had told him that an individual living at Nielsen's address and driving a car with a personalized license plate reading "Skydive" possessed one-half pound of cocaine valued at approximately $16,000. Detective Howard further stated that he had confirmed the informant's tip and that he considered the informant to be reliable because the informant's previous tips had led to the arrests of three individuals on drug-related charges.

A warrant authorizing a search for narcotics was issued and immediately executed. Nielsen was arrested after the search revealed that he possessed approximately 17.5 grams of cocaine, or just over one-half ounce. At a preliminary hearing, Detective Howard testified about the circumstances establishing probable cause for issuance of the warrant, repeating the statements contained in his affidavit.

After Nielsen was bound over for trial, the prosecution revealed that Detective Howard's affidavit, which was the sole support for the search warrant, contained false statements. Contrary to his representations, both in the affidavit and at the preliminary hearing, Howard did not know the informant, had never had any personal contact with him, and had no personal knowledge of any facts relevant to the informant's credibility. Instead, Detective Howard had been informed of the facts set forth in the affidavit and testified to at the preliminary hearing by another police officer, one Lieutenant Blair.

When the false statements came to light, Nielsen moved to suppress the evidence obtained in the search. Nielsen also moved the court for an order requiring the prosecution to identify and produce the confidential informant referred to in the affidavit. After a hearing, the trial court denied both motions in a minute entry. Nielsen proceeded to trial, where he was convicted of possessing a controlled substance with intent to distribute for value.

Before this Court, Nielsen first asserts that the intentional misstatements contained in Howard's affidavit rendered the warrant invalid and the ensuing search illegal under the fourth amendment to the federal constitution. Accordingly, he argues that evidence obtained from that search should have been suppressed.

The overriding purpose of the fourth amendment's provision prohibiting unreasonable searches and seizures is to safeguard personal privacy against arbitrary and unwarranted intrusions by governmental officials. *E.g., Boyd v. United States,* 116 U.S. 616, 624–30, 6 S.Ct. 524, 528–32, 29 L.Ed. 746 (1886); *State v. Harris,* 671 P.2d 175, 178 (Utah 1983). To that end, the Constitution provides that, with certain exceptions not relevant here, a search must be authorized by a warrant issued "upon probable cause, [and] supported by Oath or affirmation...." U.S. Const. amend. IV.

 The responsibility for issuing warrants and for meeting the pertinent constitutional requirements that underlie their issuance rests with the magistrate, a neutral and detached party who independently determines whether probable cause exists to support a search. *United States v. Jeffers,* 342 U.S. 48, 51, 72 S.Ct. 93, 95, 96 L.Ed. 59 (1951); *see State v. Hygh,* 711 P.2d 264, 267 (Utah 1985). The interposition of a magistrate between the investigating officer and the person who is the object of the search is intended to limit the arbitrariness which might otherwise result if the determination of probable cause were left to the unbridled discretion of the police officer conducting the search. *E.g., Johnson v. United States,* 333 U.S. 10, 13–14, 68 S.Ct. 367, 368–69, 92 L.Ed. 436 (1948); *State v. Harris,* 671 P.2d at 178. Clearly, however, the magistrate can only fulfill his constitutional function if the information given to him is true; the obvious assumption behind the warrant requirement is that the factual showing to support a finding of probable cause will be truthful. *United States v. Halsey,* 257 F.Supp. 1002, 1005 (S.D.N.Y.1966), *cited in Franks v. Delaware,* 438 U.S. 154, 165, 98 S.Ct. 2674, 2681, 57 L.Ed.2d 667 (1978). Therefore, courts must be particularly vigilant in as-

sessing a claim that a police officer has misrepresented information in an affidavit supporting the issuance of a search warrant.

 Nielsen argues that the search in this case was invalid under the legal principles espoused in *Franks v. Delaware, supra.* In *Franks,* the United States Supreme Court held that a defendant is entitled to an evidentiary hearing to challenge the validity of a search warrant if the defendant can establish that (i) an affiant in an affidavit supporting a search warrant made a false statement intentionally, knowingly, or with reckless disregard for the truth, and (ii) the affidavit is insufficient to support a finding of probable cause after the misstatement is set aside. 483 U.S. 171–72. By an extension of reasoning, the same test applies when a misstatement occurs because information is omitted; the affidavit must be evaluated to determine if it will support a finding of probable cause when the omitted information is inserted. *See, e.g., United States v. Ippolito,* 774 F.2d 1482, 1486–87 n. 1 (9th Cir.1985); *United States v. Martin,* 615 F.2d 318, 328 (5th Cir.1980); *see generally* 2 W. LaFave, *Search and Seizure* § 4.4 at 21–24 (1985 Supp.). If an affidavit fails to support a finding of probable cause after the false statements are excised or the omitted information is added, i.e., if the omission or misstatement materially affects the finding of probable cause, any evidence obtained under the improperly issued warrant must be suppressed. *Franks v. Delaware,* 438 U.S. at 156, 98 S.Ct. at 2676; *United States v. Martin,* 615 F.2d at 328; *accord, e.g., United States v. Riccio,* 726 F.2d 638, 641 (10th Cir.1984). The obvious purpose of *Franks* and its progeny is to avoid suppressing evidence when the actual facts, if known to the magistrate, would have resulted in a finding of probable cause. Deterrence of police misconduct is not to be a factor in the decision to suppress unless the misconduct materially affects the finding of probable cause.[1]

 The State first contends that Detective Howard's false statements were not made intentionally, knowingly, or with reckless disregard for the truth, but were merely inadvertent technical errors attributable to his use of a standard form affidavit. This argument is entirely unpersuasive. A law enforcement officer must be aware not only of the need for accuracy in the information provided to a magistrate in support of an application for a search warrant, but also of the importance of absolute truthfulness in any statements made under oath. In this case, Detective Howard not only testified falsely in the affidavit, but repeated the perjured testimony in person and under oath at the preliminary hearing. We must conclude that Detective Howard's testimony was knowingly false and that, as a matter of law, he acted in bad faith.

The State next contends that the warrant in this case is valid despite the false statement that Howard, rather than Lieutenant Blair, was personally familiar with the facts because the misstatement was immaterial. The State argues that warrants may be issued upon double hearsay between police officers under the general rule that law enforcement officers are presumed to tell each other the truth; therefore, the falsehood in question was not material to the magistrate's finding of probable cause. We agree.

---

1. Prior to *Franks,* several circuits had held that even immaterial misstatements required suppression of the evidence if the misstatements were intentionally false. *See, e.g., United States v. Carmichael,* 489 F.2d 983 (7th Cir.1973); *United States v. Thomas,* 489 F.2d 664 (5th Cir.1973), cert. denied, 423 U.S. 844, 96 S.Ct. 79, 46 L.Ed.2d 64 (1975); *United States v. Marihart,* 492 F.2d 897 (8th Cir.1974), cert. denied, 419 U.S. 827, 95 S.Ct. 46, 42 L.Ed.2d 51 (1974). This reliance on the exclusionary rule certainly made it clear to police that the price for lying under oath in an attempt to deceive the magistrate would be high. The Supreme Court in *Franks* apparently concluded that the price set by these circuits was too high, and resolved the conflict by requiring exclusion of the evidence only when misstatements are knowingly or recklessly false *and* material. Following *Franks,* the adequacy of remedies for such blatant police misconduct under federal law remains unclear.

The use of hearsay evidence to establish probable cause does not necessarily undercut the validity of a warrant. If the hearsay is reliable, and there is a substantial basis for giving it credence, it will support the issuance of a warrant. *United States v. Harris,* 403 U.S. 573, 580–81, 91 S.Ct. 2075, 2080, 29 L.Ed.2d 723 (1971); *accord State v. Bankhead,* 30 Utah 2d 135, 138, 514 P.2d 800, 802 (1973); *State v. Treadway,* 28 Utah 2d 160, 162–63, 499 P.2d 846, 847–48 (1972). In addition, there is a presumption that law enforcement officers will convey information to each other truthfully. *See, e.g., United States v. Ventresca,* 380 U.S. 102, 111, 85 S.Ct. 741, 747, 13 L.Ed.2d 684 (1965); *McCormick v. United States,* 309 F.2d 367, 372 (7th Cir.1962), *cert. denied,* 372 U.S. 911, 83 S.Ct. 724, 9 L.Ed.2d 719 (1963); *People v. Leahy,* 173 Colo. 339, 484 P.2d 778, 781 (1970); *see generally* 1 W. LaFave, *Search and Seizure* § 3.5(a) at 619–21 (1978). Therefore, double hearsay between police officers is not fatal on its face to the validity of a warrant.

Because of the presumption that police officers will be truthful in their communications with each other, and because double hearsay may support the issuance of a warrant, it is apparent that had Detective Howard revealed that the information was not a matter within his personal knowledge, but had been conveyed through another officer, there would have been sufficient information before the magistrate to support a finding that the informant was reliable.[2] Therefore, under the reasoning of *Franks,* we must conclude that the falsehood was not material, and we must sustain the warrant as a matter of federal law.[3]

Our holding on this point disposes of Nielsen's second argument—that the affidavit, when purged of the false statements, was insufficient to support a finding of probable cause. Given the totality of circumstances, with the omitted information inserted, the affidavit amply supported the magistrate's finding of probable cause. *See Illinois v. Gates,* 462 U.S. 213, 230–31, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983).

Our upholding of the warrant under federal law should not be read as an endorsement of Detective Howard's conduct or as a determination of how the issue might be resolved under the Utah Constitution. As this case illustrates, the federal law as it has developed since *Franks v. Delaware* is not entirely adequate. There is no stronger argument for developing adequate remedies for violations of the state and federal

---

2. In the present case, the falsity in the affidavit was Detective Howard's representation that he had talked to the informant personally, when in fact it was Lieutenant Blair who knew the informant and conveyed the information to Howard. Presumably, Howard was unaware that he could rely on the hearsay from Blair in seeking a warrant and lied to the magistrate and the court in an attempt to cure what he preceived to be an evidentiary problem. Under these circumstances, it seems appropriate to analyze the affidavit for probable cause by adding the information improperly omitted. *See United States v. Ippolito,* 774 F.2d at 1486–87 n. 1.

3. The dissent cites a case factually on point in support of its assertion that the misrepresentation was material and therefore required suppression of the evidence. *See United States v. Davis,* 714 F.2d 896 (9th Cir.1983). We believe that both the court in *Davis* and the dissent strain too hard to reach a result in declaring the misstatement material. It appears that both are motivated by a desire to reach wrongful police conduct regardless of the materiality of the mis-

conduct. However, that use of the exclusionary rule is precisely what *Franks* repudiated. *See* n. 1, *supra.* It is apparent in both the *Davis* case and here that had the magistrate known the true facts, probable cause would have nonetheless been established. *Cf. United States v. Jenkins,* 728 F.2d 396 (6th Cir.1984).

Some courts have suggested a means for avoiding the result dictated by *Franks* by excluding evidence when intentionally false but immaterial statements were made in support of a warrant's issuance. They have indicated that a court might rely on its general supervisory powers to exclude evidence seized in willful disobedience of the law when the evidence is not otherwise excludable under the fourth amendment. *See United States v. Cortina,* 630 F.2d 1207, 1214–16 and n. 5 (7th Cir.1980) (dicta); *United States v. Barnes,* 604 F.2d 121, 153 n. 17 (2d Cir.1979) (dicta), *cert. denied,* 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980). We decline to follow this example, at least where federal constitutional questions are involved, because they are a direct avoidance of the governing fourth amendment case law.

constitutional prohibitions on unreasonable searches and seizures than the example of a police officer deliberately lying under oath in order to obtain a search warrant. *See* S. Kipperman, *Inaccurate Search Warrant Affidavits as a Ground for Suppressing Evidence*, 84 Harv.L.Rev. 825, 831 (1971). To allow a police officer to obtain a warrant utilizing false information tends to undermine respect for the legal system and to make the public cynical about the honesty and professionalism of those entrusted with law enforcement. As one commentator has observed, however, "[e]ven though warrants issued on the basis of police perjury and warrants issued without probable cause are equally reprehensible, they are not equally unconstitutional.... Under *Franks,* evidence is to be excluded if, inter alia, the culpability of the affiant-officer *destroyed* probable cause," but warrants based on perjury may be constitutional if probable cause otherwise exists. Comment, *Franks v. Delaware: Granting the Right to Challenge the Veracity of Search Warrant Affidavits*, 45 Brooklyn L.Rev. 391, 405 (Winter 1979).

Our decision about what the appropriate remedy might be if Nielsen had argued that the officer's action violated his rights under article I, section 14 of the Utah Constitution is an open question. This Court has not decided whether an immaterial, intentional misstatement in an affidavit supporting a warrant requires suppression of the evidence as a matter of Utah law or whether it may give rise to some civil cause of action. It is worth noting, however, that the Utah Legislature has enacted a statute which provides a remedy for search and seizure violations under the Utah Constitution.[4] *See* U.C.A., 1953, §§ 78–16–1 to –11 (Repl.Vol. 9A, 1977 ed., Supp.1985). In addition, the police officer may be liable for damages under the provisions of the feder-

al Civil Rights Act, 42 U.S.C. § 1983 (1982). *Cf. Malley v. Briggs*, 475 U.S. ——, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

Nielsen's assertion that the trial court violated his due process rights when it failed to require the prosecution to disclose the identity of the confidential informant referred to in the affidavit can be quickly disposed of. As a matter of due process, the identity of a confidential informant must be disclosed only when such disclosure is "essential to a fair determination of the issues." *State v. Forshee*, 611 P.2d 1222, 1224 (Utah 1980).[5] The trial court must weigh several factors in determining whether to require disclosure: the defendant's need for disclosure in order to prepare a defense, the potential safety hazards to the persons involved, and the public interest in preserving the flow of information from informants. *Id.* By necessary implication, a defendant must make some showing that disclosure of an informant's identity is material and essential to his defense.

In this case, Nielsen argued merely that entrapment was "often a legitimate defense" in drug cases and that identifying the informant "[might] provide a critical element" in his entrapment defense. Nielsen did not assert that the informant was a material witness or a participant in the crime charged, nor did he make any factual showing that the informant could provide information relevant to his defense. Under these circumstances, he failed to overcome the government's privilege against disclosure. *See State ex rel. Collins v. Riddel*, 133 Ariz. 376, 651 P.2d 1201, 1202 (1982); *State v. Helfrich*, 33 Wash.App. 338, 656 P.2d 506, 510 (1982).

The conviction is affirmed.

HALL, C.J., and HOWE and DURHAM, JJ., concur.

---

**4.** Although the legislature has recognized the need for some remedy for search and seizure misconduct by police, we express no opinion about the validity of the statute insofar as it attempts to otherwise limit the remedies available for violations of the federal or state constitutions.

**5.** When *State v. Forshee* was decided, Rule 36 of the Utah Rules of Evidence contained an express provision concerning confidential informants. The rule has since been repealed, but the exception to the privilege against nondisclosure of a confidential informant's identity continues to exist as a matter of due process.

STEWART, Justice (dissenting):

I dissent. The evidence obtained pursuant to the search warrant should be suppressed under the law stated in *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). The search warrant was invalid because a knowingly false affidavit provided the basis for the issuance of the warrant.

The primary protection afforded citizens against official, arbitrary intrusions into their homes and other private places is the requirement of a search warrant issued by a magistrate on proof that probable cause exists to invade a person's privacy. *Illinois v. Gates*, 462 U.S. 213, 239–40, 103 S.Ct. 2317, 2332–33, 76 L.Ed.2d 527 (1983); *see United States v. Leon*, 468 U.S. 897, 913, 104 S.Ct. 3405, 3416, 82 L.Ed.2d 677 (1984). The integrity of the process is dependent upon truthful affidavits that establish probable cause. *United States v. Leon, supra*, recently expressly reaffirmed the rule established in *Franks v. Delaware, supra*, that though evidence is obtained pursuant to a search warrant, the evidence must be suppressed if the warrant was based on an affidavit that was false and the affiant knew it to be false. *United States v. Leon*, 468 U.S. at 923, 104 S.Ct. at 3421. 2 W. LaFave, *Search and Seizure* § 4.4, at 20 n. 11 (Supp.1986). Condoning police misstatements that are knowingly false is fraught with intolerable evils. It not only allows the police to manipulate the judiciary, but also subverts Fourth Amendment freedoms.

On facts virtually identical to those in this case, the United States Court of Appeals for the Ninth Circuit reversed the conviction of a defendant implicated in a murder and drug conspiracy. *United States v. Davis*, 714 F.2d 896 (9th Cir. 1983).[1] The court stated:

Thompson could have relied on the facts learned from his subordinates to prepare a truthful affidavit. *See e.g., United States v. Steed*, 465 F.2d 1310, 1315 (9th Cir.), *cert. denied*, 409 U.S. 1078, 93 S.Ct. 697, 34 L.Ed.2d 667 (1972). This entire problem could have been avoided if Thompson had simply rewritten the affidavit to indicate that he was relying on his officers who had personally interviewed the informants. *See United States v. Ventresca*, 380 U.S. 102, 110–111, 85 S.Ct. 741, 746–47, 13 L.Ed.2d 684 (1965). Similarly, the affiant in *Franks* could have stated that his fellow officer interviewed the informants in question. By failing properly to identify their sources of information the affiants in each case made it impossible for the magistrate to evaluate the existence of probable cause. *Franks* teaches that when, as in this case, that failure is intentional the warrant must be invalidated. *The fact that probable cause did exist and could have been established by a truthful affidavit does not cure the error.*

*Id.* at 899 (emphasis added). *See also United States v. Kirk*, 781 F.2d 1498, 1504–05 (11th Cir.1986).

The case is not comparable to cases in which the knowledge of one officer is imputed to another for the purpose of determining whether the officer had probable cause. *See, e.g., United States v. Ventresca*, 380 U.S. 102, 111, 85 S.Ct. 741, 747, 13 L.Ed.2d 684 (1965); *United States v. Bernard*, 607 F.2d 1257, 1266–67 (9th Cir. 1979).

Officers operating in the field are entitled to rely on the information and judgment of fellow officers with whom they are working in close concert. The situation is very different when an application is made for a warrant. *Unlike officers in the field, a magistrate is not entitled to rely on the judgment of law enforcement officials. He or she is expected to review the material submitted and make a detached, independent judgment as to the existence of probable cause.*

*ed States v. Davis*, 663 F.2d 824 (9th Cir.1981).

---

**1.** Most of the underlying facts are set out in an earlier appellate decision in the same case, *Unit-*

*United States v. Davis,* 714 F.2d at 900 (citations omitted) (emphasis added). *See United States v. Kirk,* 781 F.2d at 1504–05; *United States v. Leon,* 468 U.S. at 914, 104 S.Ct. at 3417.

The normal presumption of validity attached to a magistrate's finding of probable cause does not apply where the magistrate has not considered the untainted facts. *United States v. Kolodziej,* 712 F.2d 975, 977 (5th Cir.1983); *United States v. Namer,* 680 F.2d 1088, 1095 n. 12 (5th Cir.1982). Officer Howard originally may have thought that the inaccuracy was unimportant because he personally believed in the truthfulness of Detective Blair's statements, but "law enforcement officials may [not] freely submit affidavits they know to be false if they deem the falsehood not to be material." *United States v. Davis,* 714 F.2d at 900. The determination of whether probable cause exists is for the magistrate, and the fact that an affiant has no personal knowledge of the informant's reliability or the source of the informant's knowledge is material to the magistrate's probable cause determination.

In the instant case, the affiant officer inaccurately swore that he had personal knowledge of the facts establishing the re-

liability and veracity of an informant, when in fact he was relying on information he had obtained from another officer. The majority opinion asserts that under *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the affiant's misstatement was harmless error. The majority is, I submit, in error. In *Franks,* the defendant's appeal was based upon his allegation that the affiants, who were police officers, made the same type of misrepresentation as the affiant officer made in this case. *Franks,* 438 U.S. at 158, 98 S.Ct. at 2677. The Court characterized the alleged false statement as "misstatements" which placed "the integrity of the affidavits ... in issue." *Id.* at 163–64, 98 S.Ct. at 2680. *Franks* held that when a defendant makes specific allegations supported by evidence that an affiant has made an intentionally false statement in a warrant affidavit, the defendant is entitled to prove those allegations at a hearing unless, when the alleged misstatements "is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause." *Id.* at 172, 98 S.Ct. at 2684. The plain implication of the decision is that if the defendant's allegations were proved on remand, the evidence should be excluded.[2]

---

**2.** In *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the affiant officers submitted an affidavit with 18 specific factual allegations alleged to establish probable cause. *Id.* at 172–76, 98 S.Ct. at 2684–86 (Appendix A to Opinion of the Court). Included among those allegations were the following:

15. On Tuesday, 3/9/76, your affiant contacted Mr. James [Morrison, *see id.* at 158 n. 2, 98 S.Ct. at 2677] and Mr. Wesley Lucas of the Delaware Youth Center where Jerome Franks is employed and did have a personal conversation with both these people.

16. On Tuesday, 3/9/76, Mr. James [Morrison] revealed to your affiant that the normal dress of Jerome Franks does consist of a white knit thermal undershirt and a brown leather jacket.

17. On Tuesday, 3/9/76, Mr. Wesley Lucas revealed to your affiant that in addition to the thermal undershirt and jacket, Jerome Franks often wears a dark green knit hat.

*Id.* at 175–76, 98 S.Ct. at 2686. At the suppression hearing, Franks asserted that neither Lucas nor Morrison "had been personally interviewed by the warrant affiants, and that, although they might have talked to another police officer, any

information given by them to that officer was 'somewhat different' from what was recited in the affidavit." *Id.* at 158, 98 S.Ct. at 2677. The trial court refused to hear Franks' evidence. The Delaware Supreme Court affirmed that refusal, holding "that no attack upon the veracity of a warrant affidavit could be made." *Id.* at 160, 98 S.Ct. at 2678.

As a preliminary matter, the United States Supreme Court rejected the argument that the alleged misstatements were harmless under *Rugendorf v. United States,* 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964). The Court stated that, in contrast to *Rugendorf,* "[h]ere, whatever the judgment may be as to the relevancy of the alleged misstatements [to the showing of probable cause], the integrity of the affidavit was directly placed in issue by petitioner in his allegation that the affiants did not, as claimed, speak directly to Lucas and Morrison." *Franks,* 438 U.S. at 163–64, 98 S.Ct. at 2680.

The Court then outlined the scope of the limited veracity challenge required by the Fourth Amendment. Any challenge had to allege "deliberate falsehood" or "reckless disregard for the truth" in a statement "only ... of the affiant,"

In the instant case, Nielsen proved the truth of his allegations. The entire affidavit in this case was based on an informant's tip. The affiant knowingly and intentionally stated falsely that he had personal knowledge of the facts establishing the informant's veracity and reliability. Those factors are "highly relevant in determining the value of [the informant's] report." *Illinois v. Gates*, 462 U.S. at 230 (1983). Indeed, they are essential to the protection of Fourth Amendment rights.

To ensure that the probable cause requirement remains meaningful, we must "conscientiously review the sufficiency of affidavits on which warrants are issued." *Illinois v. Gates*, 462 U.S. at 239, 103 S.Ct. at 2332. Intentional misstatements must be set aside if warrants are to perform their critical purpose. *See Franks*, 438 U.S. at 171–72, 98 S.Ct. at 2684; *United States v. Kirk*, 781 F.2d at 1505–06 (warrant affidavit containing intentional misstatements analyzed in "redacted form" with misstatements excised). 2 W. La-Fave, *Search and Seizure* § 4.4(c), at 66 (1978). When the false statements in Officer Howard's affidavit are set to one side, the remaining content is insufficient to establish the veracity and reliability of the informant, and thus there are no facts remaining which justify a magistrate's exercising reasonable caution in concluding that

Nielsen had committed, or was in the process of committing, an offense. *See Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949).

The majority refuses to set aside the officer's misstatement by characterizing the misstatement as an "omission" which must be "inserted" into the affidavit. The cases relied upon by the majority do not support its holding, and *Franks* itself requires the opposite result. Although the majority asserts otherwise in a footnote, the affiant officer in the instant case did not omit anything from the warrant affidavit. He affirmatively misstated the source of his knowledge, and the rule in *Franks* controls this case.

Further, several courts have extended the rule in *Franks* to apply when facts material to a magistrate's determination of probable cause are intentionally omitted from a warrant affidavit. *See generally* 2 W. LaFave, *Search and Seizure* § 4.4(b), at 23–25 (Supp.1986). In those cases, the courts have analyzed the affidavits as if the omitted facts had been included in the affidavit for the purpose of determining whether it establishes probable cause. *See, e.g., United States v. Martin*, 615 F.2d 318, 327–28 (5th Cir.1980); *Schmid v. State*, 615 P.2d 565, 577 (Alaska 1980).[3]

and had to be directed to a specific statement and supported by reliable evidence. In addition,

> if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.[8] On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing.

*Id.* at 171–72, 98 S.Ct. at 2684. Footnote 8 contains Franks' concession "that if what is left is sufficient to sustain probable cause, the inaccuracies are irrelevant." *Id.* at 172 n. 8, 98 S.Ct. at 2684 n. 8. The case was remanded to the Delaware Supreme Court so that the court could develop its own rules to govern proffers of proof for the veracity hearings required under *Franks. Id.* at 172, 98 S.Ct. at 2684. The obvious implication of the opinion was that if Franks established the truth of his allegations, the evidence was to be suppressed.

**3.** The sole legal support for the majority's position is contained in a footnote in *United States v. Ippolito*, 774 F.2d 1482 (9th Cir.1985). *Ippolito* is a "misstatements" case, not an "omission" case, and the footnote relied on is only dictum.

In *Ippolito*, the Court of Appeals for the Ninth Circuit ruled that evidence obtained by a wiretap should have been suppressed. The federal wiretap statute requires that wiretap orders be issued only when they are necessary in a particular investigation. The district court granted the wiretap order on the basis of a false affidavit. One officer involved in the investigation of Ippolito told his contact inside Ippolito's drug ring to tell the affiant officer that the contact feared for his safety and was unwilling to investigate further, thus establishing "necessity." The trial court found that, in fact, the contact felt safe and had a great potential for uncovering further information. *Id.* at 1484.

*Ippolito* found that the *Franks* analysis should be applied to suppress evidence obtained by wiretap orders issued on the basis of falsified

However, as stated above, *Franks* characterized an officer's statement that he has personal knowledge when in fact he was relying on information gained from another officer as a "misstatement," not an "omission." The Court held that when the defendant alleges that a misstatement was intentional, he is entitled to a hearing unless, when the alleged intentional misstatement is set aside, sufficient facts remain to establish probable cause. It says nothing about reading the affidavit as though the affiant had told the truth. I know of no case, and the majority has cited none, which holds that when evidence is obtained pursuant to a warrant issued on the basis of an affidavit which contains an intentional misstatement of fact relevant and material to the magistrate's determination of probable cause, the evidence need not be suppressed. On the contrary, *Franks, Davis,* and *Kirk* each considered the precise misrepresentation made in this case to be reversible error.

By ignoring the officer's false statement and assuming either that the officer in fact told the truth or that the misstatement may be disregarded even though it goes to a material factor in the magistrate's probable cause determination, the majority severely enfeebles the protections afforded

by a warrant. Contrary to the assertion of the majority, the purpose of the *Franks* ruling is to deter police misconduct. Only when the false information is irrelevant to the magistrate's determination of probable cause should warrants issued on the basis of affidavits containing intentionally false information be upheld. If the information was relevant and material to the magistrate's probable cause determination, the warrant should be invalidated and the evidence excluded. *United States v. Leon,* 468 U.S. at 923, 104 S.Ct. at 3421. *See United States v. Ippolito,* 774 F.2d 1482, 1486–87 (9th Cir.1985). That showing has been made in this case. Therefore, the warrant is invalid under *Franks,* and the evidence seized pursuant to it should be suppressed.

I would reverse the conviction and remand for a new trial.

affidavits. *Id.* at 1485. In dicta in footnote 1, the court discussed the procedure to be applied if there are material omissions from an affidavit. *Id.* at 1486–87 n. 1. The court noted that *Franks* had analyzed the affidavit after ignoring the false statements, but that courts analyzing material omissions had been forced to insert omitted material to get a more accurate picture of the harm caused by the omission. The court concluded that analyzing the warrant as though it contained the truth was the preferable approach in all cases. It therefore deleted the false statements, substituted the trial court's finding of fact, and suppressed the wiretap evidence because the wiretap was unnecessary. *Id.* at 1486–87. In footnote 3, the court noted that the result would have been the same had the material merely been deleted. *Id.* at 1487 n. 3.

The second case relied upon by the majority, *United States v. Martin,* 615 F.2d 318 (5th Cir. 1980), deals with omitted facts, not misstatements. In that case, the defendant alleged that the affiant had intentionally omitted from the affidavit the fact that the informant had been granted immunity for his information, and that the affiant had initiated the interview with the

informant and had used a "yes and no" questioning format. The Court of Appeals for the Fifth Circuit stated the general principle that when such facts are intentionally omitted from the affidavit, the affidavit must be evaluated as if the omitted material had been included to determine if probable cause existed. However, the court held that the record did not establish that the informant had been granted immunity, and that even though the other two omissions were established, the defendant had failed to prove that they were more than negligent. *Id.* at 329.

*United States v. Riccio,* 726 F.2d 638 (10th Cir.1984), did not deal with omitted material facts. Rather, the court addressed two alleged misstatements. The court stated that affidavits containing intentional misstatements must be analyzed as though the misstatement were deleted. It held that one misstatement was not material and that the defendant had not proved the other, and that even without the two alleged misstatements the affidavit contained sufficient accurate statements to support issuance of the warrant. *Id.* at 641.