IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 32215-7-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERT GENE WATTS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

BROWN, A.C.J. — Robert Watts appeals his conviction for delivery of a controlled substance (methamphetamine). He contends (1) probable cause did not support his warrantless arrest, (2) irrelevant testimony was admitted, (3) insufficient evidence supports his conviction, and (4) cumulative error. In his statement of additional grounds for review (SAG), Mr. Watts raises one additional concern, alleging ineffective assistance of counsel. We affirm without reaching cumulative error.

FACTS

The State charged Mr. Watts with delivering methamphetamine within 1,000 feet of a school bus stop while acting as a principal or accomplice on January 4, 2013. These charges arose from an investigation by the Organized Criminal Drug Enforcement Task Force (OCDET) targeting Christian Gonzales, known as Chino, for distribution of controlled substances in parts of Washington. In a joint effort with

OCDET, Commander Steve Brown, Detective Brian Bowling, Agent Jeff Prock, and Agent Seth Thomas, part of the North Central Washington Narcotics Task Force ("Task Force"), utilized a confidential informant, Lyle Long, to execute multiple controlled buys of methamphetamine from Lisa Mumm. The Task Force wanted to use Ms. Mumm to get to Chino.

The first controlled buy occurred on December 7, 2012. Mr. Long, under Task Force supervision, met Ms. Mumm at 95 Old Riverside Highway, a house owned by Mr. Watts' mother. The house was occupied by Mr. Watts, his girlfriend Ms. Mumm, and their roommate, Melissa Starzyk. Shortly after Mr. Long entered the house, a white Chevrolet Tahoe arrived; Ms. Mumm exited the house and made contact with Chino, the driver, before reentering the house. Ms. Mumm delivered methamphetamine to Mr. Long. Soon after, Mr. Long left and met up with detectives. Mr. Long told detectives that while Mr. Watts was at the house that day, he did not directly participate in the buy.

The second controlled buy occurred on January 4, 2013. The buy began at the house at 95 Old Riverside Highway before moving to the parking lot of Gene's Food Harvest (Gene's). Mr. Watts drove Ms. Mumm to Gene's in a blue Ford Explorer registered to him and parked in the north parking lot; Mr. Long drove to Gene's separately, parking in the same lot. Ms. Mumm exited the passenger side, entered Gene's via the north doors, then exited Gene's through the south doors and met with Chino in the south parking lot. After Ms. Mumm returned to the Explorer, Mr. Watts and Mr. Long drove separately to the south parking lot. The Task Force lost sight of Mr.

2

Long, but Mr. Long told the Task Force Mr. Watts drove Ms. Mumm to Gene's, was in the car when Ms. Mumm weighed the methamphetamine, and passed the bag of methamphetamine from Ms. Mumm to Mr. Long. Mr. Long remained in contact with the Task Force throughout the buy.

The final controlled buy occurred on February 1, 2013. Mr. Long drove to the house at 95 Old Riverside Highway. Ms. Mumm and Ms. Starzyk then used Mr. Watts' Explorer to deliver methamphetamine to Mr. Long at a different location. Again, Mr. Long remained in contact with the Task Force. Following the controlled buy, Mr. Long met with the Task Force, who discovered $20 in stolen Task Force money hidden in his hat. Mr. Long was not used as an informant again, and he was arrested for theft.

On February 4, 2013, Commander Brown and Agent Thomas met with Mr. Watts and Ms. Mumm at their home and told Mr. Watts of the evidence of his involvement in the January 4 delivery. Both Mr. Watts and Ms. Mumm signed a contract to act as Task Force informants in lieu of facing charges. On February 6, 2013, Agent Thomas and Detective Bowling met with Mr. Watts and Ms. Mumm. Mr. Watts provided information about Chino and named other individuals he believed sold drugs. However, Mr. Watts did not fulfill his contract and charges were filed against him.

At trial, Mr. Watts waived a CrR 3.5 hearing and stipulated to the admissibility of his statements to the Task Force. He was convicted as charged and appealed.

3

ANALYSIS

A. Probable Cause to Arrest

The issue is whether probable cause supported Mr. Watts' warrantless arrest. Mr. Watts contends probable cause to arrest him came primarily from an informant's tip, which did not pass the *Aguilar-Spinelli*[1] test, and thus his arrest was unsupported by probable cause.

Mr. Watts challenges his warrantless arrest for the first time on appeal. The State argues he waived any right to challenge his warrantless arrest when he failed to challenge it at trial. Generally, we will not review an error not raised in the trial court. RAP 2.5(a). Both state and federal courts have declined to address search and seizure issues when raised for the first time on appeal. *See State v. Trujillo*, 153 Wn. App. 454, 458, 222 P.3d 129 (2009). But RAP 2.5(a)(3) allows a claim of error to be raised for the first time on appeal if it is a "manifest error affecting a constitutional right."

To utilize this exception, a "defendant must identify a constitutional error and show how, in the context of the trial, the alleged error actually affected the defendant's rights; it is this showing of actual prejudice that makes the error 'manifest,' allowing appellate review." *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995). No actual prejudice is shown, and thus the error is not manifest, where the record is devoid of facts necessary to adjudicate the claimed error. *Id.* As recognized by this court, "[a]ttacks on probable cause do not qualify for one of the exceptions to [RAP 2.5(a)]: a

---

[1] *Spinelli v. United States*, 393 U.S. 410, 415-16, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969); *Aguilar v. Texas*, 378 U.S. 108, 114, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964).

4

defendant waives the right to challenge the trial court's admission of evidence gained by an illegal search or seizure by failing to move to suppress the evidence at trial." *Trujillo*, 153 Wn. App. at 548 (internal quotations omitted).

Mr. Watts waived his right to directly attack the legality of his arrest because he failed to object or move to suppress evidence at trial. Moreover, Mr. Watts cannot show actual prejudice. Because no motion to suppress was made, the record does not indicate whether the trial court would have granted the motion.[2] Without a showing of actual prejudice, the error is not manifest and is not reviewable under RAP 2.5(a)(3).

### B. Admitting Evidence of December 7, 2012 Events

---

[2] Mr. Watts relies on *State v. Thompson*, 13 Wn. App. 526, 536 P.2d 683 (1975), to argue for de novo review. But *Thompson* involved a challenge to an affidavit supporting a search warrant that was challenged at trial. While the *Aguilar-Spinelli* test enunciated in *Thompson* is equally applicable to determinations of probable cause to make an arrest without a warrant, even a de novo review of the record does not reveal actual prejudice. *See State v. Helfrich*, 33 Wn. App. 338, 341, 656 P.2d 506 (1982).

Information from an informant can establish probable cause to arrest where the two prongs of the *Aguilar-Spinelli* test are met: (1) basis of knowledge and (2) credibility. *Id.* at 340-41. But probable cause can still be established where there is a deficiency in one of the prongs if the police can support the missing prong by sufficiently corroborating the informant's tip. *Id.*; *State v. Jackson*, 102 Wn.2d 432, 445, 688 P.2d 136 (1984). Mr. Watts only challenges the veracity prong. Under the veracity prong, "facts must be presented to determine either the inherent credibility of the informant or the reliability of his information on that particular occasion." *Helfrich*, 33 Wn. App. at 341. An informant's reliability may be established from the informant's "track record" of providing reliable information or by showing the informant has a clear motive for being truthful. *Jackson*, 102 Wn.2d at 437; *State v. Bean*, 89 Wn.2d 467, 469-71, 572 P.2d 1102 (1978). Mr. Long's credibility is established in two successful controlled buys with the Task Force before he was removed as an informant for stealing Task Force money. He had also been a successful informant in two other independent cases. Mr. Long had a track record and a motive to tell the truth. Moreover, the information provided by Mr. Long was corroborated by the Task Force's ongoing investigation. Given all, probable cause supported Mr. Watts' arrest, and any motion to suppress based on his warrantless arrest would have properly been denied.

The issue is whether Mr. Watts was denied a fair trial when the trial court allowed testimony about the December 7, 2012 controlled buy. Mr. Watts contends his constitutional right to a fair trial was denied when the court allowed the jury to hear such irrelevant testimony as this testimony did not directly or indirectly implicate him in any wrongdoing. Rather, it materially misled the jury because the jury could infer Mr. Watts' involvement based on the fact the controlled buys occurred in or around his home.

While Mr. Watts did not object on any grounds to this testimony at trial, he now assigns error based on ER 401 and ER 403. Absent manifest constitutional error, a party may not raise an objection on appeal not properly preserved at trial. *State v. Powell*, 166 Wn.2d 73, 82, 206 P.3d 321 (2009). We "adopt a strict approach because trial counsel's failure to object to the error robs the court of the opportunity to correct the error and avoid a retrial." *Id.* Evidentiary errors under ER 401 are nonconstitutional in nature. *Cobb v. Snohomish County*, 86 Wn. App. 223, 236, 935 P.2d 1384 (1997).

Even if an objection had been made, a trial court's ruling on the admissibility of evidence is reviewed for abuse of discretion. *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995) (abuse of discretion exists when a trial court's exercise of discretion is manifestly unreasonable or based on untenable grounds or reasons). Relevant evidence is that which has "any tendency to make the existence of any fact that is of consequence . . . more probable or less probable." ER 401. The testimony about the December 7, 2012 buy was relevant as it tended to make the State's theory that Mr. Watts was a principal or accomplice in the distribution of methamphetamine more

6

probable. The evidence was probative of Mr. Watts' knowledge of the drug transactions occurring at his house as he was present at the time of the controlled buy. It was relevant to the credibility of Mr. Watts and other witnesses about discrepancies in when exactly Mr. Long was present at Mr. Watts' house and whether he knew Ms. Mumm sold methamphetamine. The court did not abuse its discretion in allowing the testimony.

ER 403 allows a trial court to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, . . . or misleading the jury." Mr. Watts briefly argues the testimony was prejudicial because it associated him with drug dealing even though he was not involved in the controlled buy. Mr. Watts' argument fails. Even if admission of the testimony was constitutional error, it was not manifest as it had no "practical and identifiable consequences in the trial of the case" where there was other testimony showing Mr. Watts had knowledge of the drug transactions occurring at his house. *State v. Stein*, 144 Wn.2d 236, 240, 27 P.3d 184 (2001). Because the error is not a manifest constitutional error, Mr. Watts failed to preserve the issue on appeal.

## C. Evidence Sufficiency

The issue is whether sufficient evidence supports Mr. Watts' conviction for delivery of a controlled substance. Mr. Watts contends the State's evidence does not prove beyond a reasonable doubt he delivered methamphetamine on January 4, 2013. He mainly argues Mr. Long was not a credible witness.

7

Evidence is sufficient to support a guilty finding if "'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (emphasis omitted) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). This sufficiency challenge "admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We defer to the jury's assessment of conflicting testimony, witness credibility, and evidence weight. *State v. Carver*, 113 Wn.2d 591, 604, 781 P.2d 1308, 789 P.2d 306 (1989).

RCW 69.50.401(1) provides "it is unlawful for any person to deliver . . . a controlled substance." The jury was instructed each of the following elements must be proved beyond a reasonable doubt: "(1) That on or about January 4, 2013, the defendant[ ] delivered a controlled substance; (2) That the defendant knew that the substance delivered was a controlled substance; and (3) That the acts occurred in the State of Washington." Clerk's Papers at 39. Mr. Watts' focus is the first element.

When viewed in the light most favorable to the State, Detective Bowling and Mr. Long saw Mr. Watts driving the Explorer on January 4, 2013. Mr. Watts drove Ms. Mumm to Gene's, where she got out of the car and met with Chino to get drugs. Commander Brown verified just prior to arriving at Gene's, Chino had frequented a known dope house. Mr. Watts was not seen leaving the Explorer. Mr. Long told the Task Force Mr. Watts was in the Explorer with Ms. Mumm when she weighed out the

8

methamphetamine. Mr. Long said Ms. Mumm handed the bag of methamphetamine to Mr. Watts, who then handed it to Mr. Long. When Mr. Long met with the Task Force right after this controlled buy, he had a bag of methamphetamine; Mr. Long and his car were searched immediately before the buy, and he was followed throughout the transaction. Mr. Watts' involvement was further buttressed by Ms. Starzyk's testimony that Mr. Watts knew Ms. Mumm sold drugs and drove her to pick up the drugs. The jury was instructed on accomplice liability. Mr. Watts' act of driving Ms. Mumm to Gene's to pick up drugs and remaining in the car with Ms. Mumm while she sold the drugs to Mr. Long shows Mr. Watts was an accomplice. "Accomplice liability is principal liability." *State v. Toomey*, 38 Wn. App. 831, 840, 690 P.2d 1175 (1984).

Mr. Watts unpersuasively argues Mr. Long should not have been allowed to testify because his testimony was highly incredulous. But Mr. Watts' argument goes to the weight, not the admissibility, of Mr. Long's testimony. We do not reweigh evidence or decide witness credibility. Mr. Watts was able to cross-examine Mr. Long about his dishonesty convictions and his potential bias. At that point, it was up to the jury to determine how much weight to give to Mr. Long's testimony.

### D. SAG

Although Mr. Watts did not challenge the constitutionality of a warrantless arrest below, he can raise that issue now in the context of an ineffective assistance of counsel claim. *McFarland*, 127 Wn.2d at 333, 338. To establish ineffective assistance of counsel, a defendant must show

9

> (1) defense counsel's representation was deficient, *i.e.*, it fell below an objective standard of reasonableness based on consideration of all the circumstances; and (2) defense counsel's deficient representation prejudiced the defendant, *i.e.*, there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different.

*Id.* at 334-35.

We strongly presume defense counsel's representation was effective. *Id.* at 335. As such, a "defendant must show in the record the absence of legitimate strategic or tactical reasons supporting the challenged conduct by counsel." *Id.* at 336. Mr. Watts has not met this burden. While the record does not show whether defense counsel's decision to waive the CrR 3.5 hearing was a legitimate strategic decision, Mr. Watts' arrest was supported by probable cause, providing a plausible reason for counsel to have waived that hearing and to have not pursued other suppression hearings.

Mr. Watts also fails to show prejudice. As discussed, Mr. Watts' arrest was supported by probable cause. Absent an affirmative showing the motion would probably have been granted, there is no showing of actual prejudice. As for Mr. Watts' concern that Mr. Long's information was insufficient to establish probable cause, this was addressed by his counsel and discussed above. *See* RAP 10.10(a). Similarly, Mr. Watts' appellate counsel addressed both of his concerns regarding evidence sufficiency and evidentiary error in his briefing. Thus, no need exists to further address the concerns here. *See* RAP 10.10(a). In sum, Mr. Watts' SAG lacks merit.

Affirmed.

No. 32215-7-III
*State v. Watts*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

Brown, A.C.J.

WE CONCUR:

Korsmo, J.

Fearing, J.

11